(68 App. Div. 148.)

## PARKER v. BENNETT.

(Supreme Court, Appellate Division, First Department.  January 24, 1902.)

LIBEL—INNUENDO—EVIDENCE.

    Charles A. Parker was Republican candidate for alderman.  On request, he furnished a paper with a photograph and sketch of his career, but the paper inserted in the sketch the words: "His path has been a rough one.  Recently he has had some notoriety because of his alleged connection with a gaming house in Asbury Park, N. J."  Some years before, a Democrat named Charles Parks had been a city alderman, and had been convicted of keeping a gambling house at Asbury Park, and sentenced to penal servitude.  In an action for libel plaintiff alleged by innuendo that the article charged him with being such Charles Parks, and on the trial the court admitted accounts published in the Herald four years before of the trial and conviction of such Parks.  *Held*, that the innuendo was not justified.

Appeal from trial term, New York county.

Action by Charles A. Parker against James Gordon Bennett. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.  Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Robert W. Candler, for appellant.

Gratz Nathan, for respondent.

LAUGHLIN, J.  The object of this action is the recovery of damages for a libel published in the New York Herald on the 24th day of October, 1897.  The plaintiff had been a resident of the city of New York for about 30 years, and had carried on business as a builder during that time.  At the general election in 1894 he was elected alderman in the Twenty-Fifth district.  His term of office expired on the 31st day of December, 1898.  He was renominated by the Republicans for alderman of the Twenty-Ninth district, the boundaries of the district having been changed in 1897.  He subsequently received a circular letter from the Herald announcing its intention to issue an election supplement containing a picture and short sketch of all candidates for elective offices in Greater New York, and requesting a sketch of his career, giving his full name, date, year, and place of birth, business or profession, political offices already held, the office for which he was a candidate, and the party by which he was nominated.  He complied with this request, and thereafter, and on the 24th day of October, the Herald published its election supplement.  Under the heading "Some of the Candidates for the Board of Aldermen in New York County," it presented a small picture of the plaintiff, from the photograph furnished by him, and a sketch reading as follows:

"Charles A. Parker, Republican candidate for alderman in the 29th assembly district, New York, was elected alderman in the old 29th district in 1894.  His path has been a rough one.  Recently he has had some notoriety because of his alleged connection with a gaming house in Asbury Park, N. J.  He was born in 1831, in Long Branch, and was a farmer until he was nineteen, when he came to New York, and learned the mason trade, in which he has since continued as a superintendent and master builder.  He

ran for the assembly in the year Fassett led the Republican host, but Mr. Parker was some five thousand votes behind in the old 25th district. Annexed is a portrait of Charles A. Parker."

The sketch which he furnished contained all that was embodied in the article as published except the alleged libelous words, which are: "His path has been a rough one. Recently he has had some notoriety because of his alleged connection with a gaming house in Asbury Park, N. J." One Charles Parks had been a member of the board of aldermen for three years, representing the Thirteenth district, and his term expired at the time plaintiff's term began. The complaint alleged that the Herald and other New York dailies during the four years preceding the 7th day of December, 1897, the date of the commencement of the action, had repeatedly branded said Parks, whose name seems to be erroneously stated Charles A. Parks in the complaint and in the answer, as a common gambler and gaming house keeper, and as the keeper of disorderly and unlawful places for the entertainment of criminals and other disreputable people, and had published a detailed and sensational account of his trial in New Jersey upon the charge of having kept a gambling house in Asbury Park, and of his conviction thereon, and sentence to penal servitude; that said newspapers had likewise, during said period, published detailed and sensational accounts of the trials of police officers upon the charge of having allowed said Parks, who it is alleged was commonly known as Alderman Parks, to conduct gaming houses in the city of New York; that by reason of the premises said Parks became widely known throughout the country, and especially in the city of New York, as an alderman who had been convicted of keeping a gambling house in Asbury Park, and as a disreputable person of criminal habits and associations. It was further alleged by innuendo that the libelous article charged the plaintiff with being the said notorious Charles Parks. The answer contained a general denial, and set up, as a partial defense and in mitigation, that, owing to the illegibility of plaintiff's signature to the sketch furnished by him, the employés of the defendant mistook his name for Charles Parks, whose record they looked up, and dictated as published, except that the stenographer by mistake changed the name from Parks to Parker, and that upon the discovery of the mistake two days later the Herald published a retraction and explanation under the heading: "Justice to Charles A. Parker. Misstatement about Aldermanic Candidate in 29th District,"—to the effect that the former article was published through a confusion of names, and that the candidate Charles A. Parker was a well-known master builder, whose name had never been linked with the gambling house scandal at Asbury Park, or with any other scandal.

Upon the trial plaintiff offered in evidence an article published in the Herald on the 17th day of November, 1894, headed: "Parks Found Guilty. The New York Alderman Convicted of Keeping a Gambling Place at Asbury Park." The defendant's counsel objected to this evidence as irrelevant, incompetent, and tending to enlarge the meaning of the alleged libelous words beyond that of which they were susceptible, and upon the further ground that the com-

plaint did not allege the publication of this article by defendant. The objections were overruled, and defendant excepted. The article was then read in evidence. It was dated "Freehold, N. J., November 16, 1894," and stated, in substance, that Alderman Charles Parks, of New York, was that day there tried before a jury, and convicted on the charge of "operating and maintaining a gambling establishment" at Asbury Park. Another article published in the Herald on the 18th of November, 1894, reciting the previous conviction of Alderman Charles Parks in New Jersey, and stating that he was, and had been for some time, in ill favor with Tammany Hall, and had a record in New York "of which he has no occasion to feel proud," was read in evidence under like objections and exception. The plaintiff testified that he stopped at Long Branch during the summer of 1897, and visited Asbury Park very often; that his associates "made a kind of butt" of him "as keeping a gambling house down there," and that he heard it talked about among his associates in the board and other persons that he met outside. It thus appears that Parks ceased to be a member of the board of aldermen before the plaintiff became a member of that body; that Parks was a Democrat, while plaintiff was a Republican; that plaintiff's name was not the same, and he represented an entirely different district from that previously represented by Parks. A fair likeness of the plaintiff was printed with the alleged libel, and there is no evidence that he in personal appearance resembled former Alderman Parks. It was not shown when or where Parks was born, or how long he had resided in New York, or whether he was a builder by trade. The alleged libel gave the plaintiff's true name, and made no express reference, at least, to Parks, concerning whom the article had been published nearly three years before. No evidence was given tending to show that "connection with a gambling house in Asbury Park, N. J.," was a crime, and we cannot take judicial notice of the statutory law of a foreign state. At common law, however, gaming houses were public nuisances, and those keeping them were subject to indictment. 4 Bl. Comm. *666, *667. Doubtless the article in and of itself was libelous per se, as tending to disgrace the plaintiff, and subject him to public reproach, scorn, and contempt for having been connected with a gambling house. It would seem, however, that the case was not tried upon that theory. The complaint was skillfully drafted to show that the alleged libelous article was calculated to convey the impression that the plaintiff was the alderman who had been convicted and sentenced for the crime of keeping a gambling house at Asbury Park, and the evidence presented by the plaintiff was designed to develop that theory. At the close of the plaintiff's case, counsel for the defendant moved to strike out the evidence of the prior publications in the Herald relating to Alderman Parks upon the same grounds upon which he objected to its reception. The motion was denied, and he excepted. At the close of the evidence defendant's counsel moved for a dismissal of the complaint, and upon a denial of that motion by the court he asked to go to the jury upon the question as to whether the words complained of were susceptible of the meaning attributed by the innu-

endo, and also upon the further question as to whether they were libelous per se.    The court denied these requests, and ruled that the only question for the jury was the amount of damages.    To these rulings the defendant's counsel duly 'excepted.    The court thereupon instructed the jury upon the law relating to the measure of damages, and stated, at the outset, that the only question for their determination was the amount of damages they would award to the plaintiff.    The defendant's counsel also excepted to that part of the charge which confined the investigation of the jury to the question of damages.    The court in no manner eliminated from the consideration of the jury the claim of the plaintiff that the alleged libelous article in effect charged the plaintiff with being the notorious convicted Alderman Parks, or evidence received on that subject.    The court thus ruled, in effect, as matter of law, that this article would naturally be understood by readers of ordinary and average intelligence as charged in the innuendo.    The magnitude of the verdict indicates that the jury understood that the defendant was liable for damages upon the theory that the article charged the plaintiff with being the convicted alderman.    The prior article being before them, and the graver meaning of the words not having been excluded from their consideration by the court, the jury could not well have concluded otherwise.    We regard this ruling as erroneous.    But it is not to be understood that we deem the question as to whether the article was susceptible of the meaning ascribed in the innuendo one for the jury.    Were it not for the admission in the answer that the mistake arose through a confusion of names, it would not be apparent that the libelous article was intended to charge the plaintiff with the crimes and misdeeds of which Alderman Parks had been convicted, or with which he had been charged, many years before. If the readers of an article would not glean from it a libelous meaning, the intent of the publisher would not make it libelous.    Upon the facts here disclosed, this article will not bear the meaning ascribed to it in the innuendo.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.    All concur.