(71 App. Div. 566.)

### GIBSON v. SUN PRINTING & PUBLISHING ASS'N.

(Supreme Court, Appellate Division, First Department. May 9, 1902.)

LIBEL—NATURE OF PUBLICATION—INEFFICIENCY OF ATTORNEY—INNUENDO.

A publication stating that plaintiff, an attorney, was recommended for removal from his position as counsel for the federal treasury department before the board of appraisers in the city of New York, on the ground of inefficiency, as the result of an investigation of his office by special agents of the department, published after his removal from office, is libelous per se, as charging him with unfitness and incompetency in his profession, when so made by innuendo.

Ingraham, J., dissenting.

Appeal from special term, New York county.

Action by William J. Gibson against the Sun Printing & Publishing Association. From an interlocutory judgment overruling defendant's demurrer to the complaint, it appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

F. Bartlett, for appellant.
M. Hopkins, for respondent.

PATTERSON, J. The defendant demurred to the complaint herein, which is framed as one in an action to recover damages for an alleged libel, and the demurrer was overruled. It was interposed on the ground that the complaint does not state facts sufficient to constitute a cause of action, the specific claimed defect being that the publication of which the plaintiff complains related to him as a public officer; that at the time of the publication he had ceased to be such public officer; that the matter complained of was not libelous per se; and

that the complaint was insufficient for the want of an allegation of special damage.

The scheme of the complaint is not altogether such as the learned counsel for the defendant seems to consider it. The plaintiff avers that at the times mentioned in the complaint, and for 30 years previous thereto, he had been, and still was, an attorney and counselor at law, regularly engaged in the practice of his profession, as a means of livelihood, in the city of New York, and that throughout that time his character and professional standing were good in the community wherein he practiced his profession; that for more than six years, to wit, between the 4th of May, 1895, and the 19th of June, 1901, he was counsel for the treasury department of the United States before the board of United States general appraisers in the city of New York; that on the 3d of July, 1901, the defendant, a corporation publishing a newspaper in the city of New York, printed and published an article on the editorial page of its newspaper, referring to and concerning the plaintiff in his professional capacity, and which was a false, scandalous, malicious, and defamatory statement and libel, and which contained, among other things, the false, scandalous, malicious, defamatory, and libelous matter following:

"Furthermore, the statement has been emphasized that Mr. Gibson's services were highly efficient and satisfactory. The interesting fact is not mentioned that his removal was recommended on the ground of inefficiency, as the result of an investigation of his office by the department of special agents of the treasury, something like two years ago. This department has hitherto had the repute of being free from purely political influences."

In connection with the matter thus claimed to have been defamatory and libelous, the following averment is made in the complaint:

"That the whole of said article, especially so much of it as is hereinbefore specifically referred to, was wickedly and maliciously contrived and intended by defendant to injure the plaintiff in his good name, fame, and credit, and professional standing, as an attorney and counselor of this court, and to bring him into public scandal, infamy, contempt, disrepute, and disgrace with and among his clients and persons who would employ him, and his neighbors, and of good citizens, by causing it to be suspected and believed by clients and those persons who would employ him, and his neighbors and citizens, that the plaintiff has been inefficient in his office as counsel for the treasury department before the board of United States general appraisers, and was incompetent to properly discharge the important duties of his profession, and especially of his said position as such counsel, and guilty of misconduct in his said office, and was removed from said office on account thereof."

The complaint then further states that said defendant conveyed, and intended to convey, the meaning, and allege and cause to be suspected and believed by said clients and persons who would employ him, and his neighbors and citizens, that his conduct in office had been investigated, and that his removal had been recommended on the ground of inefficiency, and that this plaintiff was incapable of fulfilling the duties of his said office, and that his professional attainments were meager, and that he had been guilty of misconduct in his office, and that the investigation had actually been made by the treasury department through the special agents of the said department, and that his said removal had been made on that account.

The argument is earnestly made by the defendant that the matter of

which the plaintiff complains does not constitute a general charge affecting the plaintiff as a lawyer, but the whole of it is merely to be confined to a charge of inefficiency in a particular position, and that a proper construction of such matter would bring the article within the decision of this court in Ratzel v. Publishing Co., 67 App. Div. 598, 73 N. Y. Supp. 849, where the charge was merely of a general careless manner of attending to business, and which was not regarded as a statement libelous per se. This case does not fall within the Ratzel Case. In many cases where the words or language charged do not touch a person in his business, profession, or calling it is necessary to make allegations of special damage; but where the words do affect a person in that manner, they are libelous per se, as is illustrated in an action for slander by Gideon v. Dwyer, 87 Hun, 246, 33 N. Y. Supp. 754, and in actions for libel by Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 810; Mattice v. Wilcox, 147 N. Y. 624, 42 N. E. 270; and Krug v. Pitass, 162 N. Y. 154, 56 N. E. 526, 76 Am. St. Rep. 317. The question here is whether the matter of which the plaintiff complains may be construed to be libelous per se. That which is alleged in the article against the plaintiff is not only inefficiency, but it distinctly charges that an investigation had been made by the treasury department, and that those who made it recommended the removal of the plaintiff from his office on the ground of inefficiency. The innuendo ascribing a meaning to the article is that it charges that the plaintiff was incompetent to discharge the important duties of his profession and of his position as such counsel, and that the meaning intended to be conveyed by the defendant was that after an investigation his removal had been recommended on the ground of his inefficiency, and of his being incapable of fulfilling the duties of his office, and that his professional attainments were meager, etc. The contents of the article, in connection with the innuendo, are of such a character as to indicate that the language used was libelous per se, because it necessarily affects the status of the plaintiff as a lawyer, and hence is calculated to affect him injuriously in the practice of his profession. Undoubtedly an innuendo cannot extend or enlarge the matter set forth in an alleged libel (Fleischmann v. Bennett, 87 N. Y. 231), and it becomes a matter of construction for the court to determine whether the words used are susceptible of the application, explanation, or interpretation which the pleader has given to them in the innuendo. If they are susceptible of the meaning ascribed to them, without distorting them or without straining their natural meaning and import, then they may be regarded as libelous per se; but it must be left to the jury to say whether or not they were understood and intended in the sense ascribed to them in the innuendo. Patch v. Association, 38 Hun, 368. The innuendo explains the words spoken and affixes to them their proper meaning; and, in determining whether such words are susceptible of that meaning, the court will not construe them in mitiori sensu, or otherwise than according to their fair signification. Here we cannot doubt that the alleged inefficiency, in connection with the statements in the article of the results of that alleged inefficiency (its serious character being such that it led to an investigation and a recommendation that the plaintiff be dismissed from his

office), necessarily touch him and affect him in his standing as a law-
yer in the community in which he practiced his profession. As the
matter complained of is susceptible of the meaning put upon it in the
innuendo, it may be considered libelous per se, and damage will be
presumed.

We therefore think the demurrer was properly overruled, and the
interlocutory judgment should be affirmed, with costs, with leave to
the defendant to withdraw the demurrer and answer on payment of
costs in the court below and of this appeal. All concur, except IN-
GRAHAM, J., dissenting.

INGRAHAM, J. (dissenting). I do not agree to the affirmance of
this judgment. The alleged libel consisted of a newspaper comment
upon the removal of the plaintiff from the position of counsel for the
treasury department of the United States before the board of United
States general appraisers in the city of New York. It states that cer-
tain newspapers had been insisting that the plaintiff's removal was a
flagrant violation of the letter and spirit of the civil service law, while
in truth and in fact it was neither. The article then stated, and in this
statement was contained the alleged libel:

"Furthermore, the statement had been emphasized that Mr. Gibson's serv-
ices were highly efficient and satisfactory. The interesting fact is not men-
tioned that his removal was recommended on the ground of inefficiency, as
the result of an investigation of his office by the department of special
agents of the treasury, something like two years ago."

The discussion was as to the act of the treasury department in mak-
ing the removal. The article did not directly charge that the plaintiff
had been inefficient in the discharge of his duties, or incapable of per-
forming them, or that the plaintiff's services were not highly efficient
and satisfactory. It called attention to the fact, in commenting upon
his removal, that it had been recommended by certain public officers
on the ground of inefficiency as a result of an investigation that these
officers had made. There is no allegation of special damage, and to
sustain the complaint it must appear from the article that these words
were written in relation to the plaintiff's profession, and that they had
a tendency to or were calculated to prejudice him therein. The plain-
tiff alleges that he is an attorney and counselor at law, and that these
words are such as would have a tendency to prejudice him in that pro-
fession; but to sustain the complaint it must appear, by fair intend-
ment, that the words spoken, used in their ordinary sense, are such as
would tend to have that effect. The article was a justification of the
act of an official in removing the plaintiff, based upon what is alleged
to have been a report of the subordinate officers of the department;
and while it is true that the law gives an action for words that affect
a man's credit in his profession, as charging him generally in his pro-
fession with ignorance or want of integrity, either in general or in par-
ticular (Mattice v. Wilcox, 147 N. Y. 630, 42 N. E. 270), to sustain
an action the words used are to be construed fairly and naturally. The
test is whether, to the mind of an intelligent man, the tenor of the
article, or the language used, naturally imports such a charge. More
v. Bennett, 48 N. Y. 476. In this case the report was said to relate

to the efficient discharge of the plaintiff's duties in the office that he held, and I do not think that this article exceeded the limit of proper criticism of a public officer, and that there was nothing in the article, as alleged, which justified the innuendo that the written words conveyed and intended to convey that the plaintiff was incapable of fulfilling the duties of said office; that his professional attainments were meager; that he had been guilty of misconduct in his office; and that his removal had been made on that account. If every charge of inefficiency against a public officer is libelous per se, without the election of special damage, it is difficult to see how the people would obtain knowledge of the efficiency of the public servants, as under our system of government, where all appointments to public office come either directly or indirectly from the people, it is essential that there should be the fullest opportunity of discussion and criticism as to the capacity and efficiency of those selected for such appointments. There is nothing in this charge, as I look at it, that related to the plaintiff's professional character or ability as a lawyer. It is alleged that certain special agents had reported that he was inefficient in the discharge of the duties of a certain public office that he held. The charge was made, not to procure his removal from office, but to sustain the public authorities in having removed him. I do not think that was a charge affecting him in his profession.

I think the demurrer should have been sustained.