## BARRINGER v. SUN PRINTING & PUBLISHING ASS'N.

(Supreme Court, Appellate Division, First Department. February 6, 1914.)

1. LIBEL AND SLANDER (§ 86*)—"INNUENDO."

The purpose of an "innuendo" in a complaint alleging a libel is to explain the language and ascribe to it the meaning intended to be conveyed, but an innuendo cannot enlarge the scope of language and make it libelous by ascribing a meaning of which it is not fairly susceptible.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 205–208; Dec. Dig. § 86.*]

2. LIBEL AND SLANDER (§ 123*)—ACTIONS—JURY QUESTION.

In an action for libel, where the article complained of is susceptible of a libelous meaning, the question of the sense in which it was understood by readers is for the jury.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. § 123.*]

3. LIBEL AND SLANDER (§ 10*)—WHAT CONSTITUTES.

A newspaper article, published some 18 months after plaintiff had been transferred from a certain public school, where he had been principal, which alleged that his successor had brought harmony out of chaos, that pupils and teachers were loyal to his successor, and that he had reduced the number of pupils who came late to school from 100 or 200 to 7 or 8, is not libelous in charging plaintiff with incompetency, want of tact and skill in his profession; the publication in no way referring to plaintiff and being susceptible of the construction that the matters referred to occurred during the interim between plaintiff's régime and that of his successor.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 41, 91–96; Dec. Dig. § 10.*]

Appeal from Special Term, New York County.

Action by Theodore B. Barringer against the Sun Printing & Publishing Association. From a judgment overruling its demurrer to the complaint, defendant appeals. Reversed, and demurrer sustained

The plaintiff alleges that for more than eight consecutive years prior to the 30th day of June, 1910, he was principal of public school No. 39 in the city of New York; that on that day he was transferred to another public school in said city, and one Scheider was appointed principal of public school No. 39 as his successor; that he is still following his vocation as a public school principal; that the defendant is a domestic corporation engaged in publishing a newspaper known as the Evening Sun, having a general circulation throughout the state; and that on the 29th day of January, 1912, the defendant maliciously published in said newspaper of and concerning the plaintiff in his profession, "false and defamatory matter, imputing unto the plaintiff gross and general ignorance and incapacity and a total want of skill in his profession, under the following caption:

"'39' Is Harlem's Oldest School.

"All Nations are Represented Among the Pupils.

"Principal Has Hard Task.

"Mr. Scheider has Brought Harmony out of Chaos."

—(meaning that chaos reigned in public school 39 under Mr. Scheider's predecessor, the plaintiff herein, through the plaintiff's lack of administrative ability, incompetence, and want of tact and skill in his profession as a principal of public schools) and in the body of the article in which the following appears: (b) "Mrs. Killeen, his assistant, who is also principal of evening school 72 on East 106th street, whispered the other morning to a visitor: 'Mr. Scheider has brought harmony out of chaos'" (meaning that when Mr.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Scheider succeeded the plaintiff as principal of public school 39 he found the school, as an organization, utterly demoralized and in chaos in consequence of his predecessor's [the plaintiff's] lack of administrative ability and his general incompetence as a principal). (c) "Harmony reigns and the teachers would do anything in the world for him" (meaning that under Mr. Scheider's predecessor the management of the school was demoralized, discord reigned, and that as between the teachers and their principal [the plaintiff herein] there was an absence of mutual respect, co-operation, sympathy, and cordiality, resultant upon plaintiff's lack of those personal qualifications, tact, professional skill, and administrative ability, prerequisite to competent and harmonious management of a public school). (d) "There is not a teacher here who is not loyal and as for the boys, he is like a big brother to most of them" (meaning that under the chaotic state which reigned under his predecessor [the plaintiff herein] the teachers were not loyal to their principal and there was no cordial relationship between the plaintiff and the boys of his school, in consequence of the lack of personal cordiality, sympathy, tact, and ability, and in consequence of the general incompetence of the plaintiff in his profession as a principal of public schools). (e) "Before he came 150 to 200 boys used to come late to school, and now the average is not more than seven or eight" (meaning that under his immediate predecessor [the plaintiff] the latter was guilty of gross incompetence as a disciplinarian and was so lacking in administrative ability that the management of the school was so demoralized through general professional incompetence that from 150 to 200 boys used to come late, while under competent management the number should have been reduced to a number merely negligible."

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

James M. Beck, of New York City (Carl A. Mead and Frederick W. Jackson, both of New York City, on the brief), for appellant.

George B. Class, of New York City, for respondent.

LAUGHLIN, J. The plaintiff further alleges that the facts stated in said publication with reference to him "were wholly false," and that by said publication he was injured in his reputation and good name and credit as a public school principal, to his damage in the sum of $5,000, for which he demands judgment.

[1-3] The difficulty with the complaint is that the article published is not susceptible of the innuendoes which the plaintiff ascribes thereto. It does not contain a single reference to the plaintiff by name, or as former principal of the school. There is no charge made in the article against the former principal of the school. The article commends the principal in office at the time it was published, which was some 18 months after the plaintiff had ceased to be principal of that school. There is no charge with respect to when the chaos referred to in the article existed. For aught that appears, it may have been incident to the change of principal during the early administration of Principal Scheider. The only charge relating to the school prior to the time Scheider became principal is the statement that before he came to the school from 150 to 200 boys "used to come late to school, and now the average is not more than seven or eight." There is no charge that the former principal was responsible for the tardiness of the boys. He may have very materially improved conditions during his administration of the school, and the parents or guardians of the pupils may have been responsible for their tardiness. A mere charge that this number of pupils were accustomed to come to school late is

not a charge that the principal of the school was incompetent. The purpose of an innuendo is to explain language and ascribe to it the meaning which it was intended to convey, but the article cannot be extended or enlarged by an innuendo; and an innuendo ascribing to a publication a meaning of which it is not fairly susceptible cannot make the article libelous. Parker v. Bennett, 68 App. Div. 148, 74 N. Y. Supp. 214; Fleischmann v. Bennett, 87 N. Y. 231; Van Heusen v. Argenteau, 194 N. Y. 309, 87 N. E. 437; Verbeck v. Duryea, 36 Misc. Rep. 242, 73 N. Y. Supp. 346; Gibson v. Sun P. & P. Ass'n, 71 App. Div. 566, 76 N. Y. Supp. 197. Of course, if in any reasonable view the article be susceptible of the meaning ascribed in the innuendo, then it would be for the jury to determine the sense in which it was understood by the readers. Morrison v. Smith, 177 N. Y. 366, 69 N. E. 725; Gibson v. Sun P. & P. Ass'n, supra; Hoey v. N. Y. Times Co., 138 App. Div. 149, 122 N. Y. Supp. 978. Laudatory and extravagent praise of Scheider's administration is not a libel on plaintiff's administration of the school. See Hubbard v. Furman University, 76 S. C. 510, 57 S. E. 478. The article as published without an innuendo did not reflect on the plaintiff in his profession as a public school principal, and it was not susceptible of any of the innuendoes which would render it libelous per se.

It follows therefore that the interlocutory judgment should be reversed, with costs, and the demurrer sustained and final judgment ordered thereon in favor of the defendant dismissing the complaint, with costs. All concur.