ALLEN V. SIEGEL, Plaintiff, *v.* SUN PRINTING AND PUBLISHING ASSOCIATION, a Corporation, Defendant.

Supreme Court, New York County, July 1, 1927.

Libel and slander — libel per se — newspaper report of proceedings for substitution of attorney stated that retainers were procured by physician in hospital while patient was in dazed condition — article stated that attorney retained was wife of plaintiff, member of hospital staff — article was not libelous — innuendo does not save complaint — report is privileged.

This is an action for libel, based on a report published in defendant's newspaper of a proceeding in the Supreme Court, New York county, to substitute an attorney in a negligence action. The report of the proceeding states that retainers, retaining the original attorney, were procured by a physician in a hospital while the patient was in a dazed condition, and that the attorney retained was the wife of the plaintiff, who is a member of the hospital staff. The statements in the article are not libelous *per se*, inasmuch as they do not charge the plaintiff with any criminal act, disgraceful conduct or hold him up to public ridicule or contempt or disgrace.

The innuendo does not save the complaint, for an innuendo cannot be used, as in this case, to enlarge the meaning of the language contained in the alleged libelous publication. An innuendo may only explain and clarify the language used.

Furthermore, the article being a fair and true report of a judicial proceeding, is privileged.

MOTION, made by defendant pursuant to rule 106 of the Rules of Civil Practice, to dismiss the amended complaint upon the ground that it appears upon its face that it does not state facts sufficient to constitute a cause of action.

*Max Seltzer*, for the plaintiff.

*Watson, Lehman & Wilguss* [*John Lehman* of counsel], for the defendant.

FRANKENTHALER, J. The plaintiff's cause of action is predicated upon a publication contained in *The Sun* of September 21, 1926, and sets forth in its entirety the news article which is complained of as libelous. The article constitutes a report of a proceeding in the Supreme Court, New York county, at Special Term, and sets forth the substance of the affidavits used on the hearing of a motion before Mr. Justice GLENNON. The motion was made for the purpose of preventing an attorney at law, Ella Frankel, from representing as attorney one Josephine Donohue in an action to recover damages for personal injuries claimed to have been sustained by said Donohue.

The heading of the article and the three main paragraphs thereof read as follows:

" SAYS PHYSICIAN GOT A LAWYER FOR PATIENTS

" INJURED WOMAN ASKS TO HAVE HER OWN ATTORNEY HANDLE HER CASE.

" HUSBAND SIGNED IN A DAZE.   ASSERTS WIFE WAS NOT PRESENT WHEN HE SIGNED RETAINER IN ST. MARK'S HOSPITAL.

. " Charges that a doctor in St. Mark's Hospital obtained from an injured patient his signature retaining a woman lawyer unknown to the patient to represent himself and wife became known to-day when Frank L. Tyson, Counsel for Mrs. Josephine Donohue, started an action in the Supreme Court to compel the woman lawyer, Ella Frankel, to withdraw from the damage suit instituted against those who disabled Mrs. Donohue.   Decision was reserved.

" It was charged in affidavits submitted to the court by Mr. Tyson that Dr. Benjamin Herz of St. Mark's Hospital had Donohue sign two retainers while he was in a dazed condition.   These retainers authorized Miss Frankel to represent Donohue and his wife at law.   It was further alleged that Miss Frankel's husband, a Dr. Siegel, is employed by or is on the staff of St. Mark's Hospital, which is located at Eleventh Street and Second Avenue.

" Justice Edward J. Glennon, who heard the motion, said: ' I don't approve of this practice.   Submit your affidavits.   I am going to look into this case.   I don't approve of doctors soliciting practice for lawyers.' "

The remainder of the article consists of the substance of the affidavits presented to Mr. Justice GLENNON, together with statements made by Dr. Herz, who was alleged in the affidavits to have procured the retainers, and by Ella Frankel, the attorney for whom the retainers were alleged to have been obtained.

It will be observed that the present action is brought, not by Dr. Herz, but by Dr. Siegel, whose only connection with the matter, so far as appears from the article, was the circumstance that he happened to be the husband of Ella Frankel, the attorney. The only other references, in the entire lengthy article, to the plaintiff, Dr. Siegel, are a reference to the fact that one Reilly, who was with the Donohues at the time they were hurt, said in his affidavit " that he had been informed that Miss Frankel was the wife of Dr. Siegel, who is connected with the hospital," and also a statement that Dr. Herz said " that when Mr. Donohue approached him for a lawyer he referred him to Miss Frankel,

who was a friend of his. He said her husband was a doctor at the hospital, but would not give his name, and referred further questions to Miss Frankel."

It seems clear to me that the publication is not libelous. No criminal act or disgraceful conduct is imputed to the plaintiff, nor is he held up to public ridicule, contempt or disgrace. The language of the article merely conveys to the reader the incontrovertible fact that the plaintiff happened to be the husband of Miss Frankel, who in turn was the attorney said to have been recommended to the Donohues by Dr. Herz. Indeed, this is fortified by Dr. Herz's statement, quoted in the article, that he referred Mr. Donohue to Miss Frankel because she " was a friend of his." It is quite impossible, save by a process of distortion of verbiage, to regard the article, read as an entirety, as libelous of the plaintiff, Dr. Siegel.

As long ago as the year 1676 the Court of Common Pleas of England decided in the case of *Lord Townsend* v. *Dr. Hughes* (2 Mod. 150, 159) that words should be construed " according to the genuine and natural meaning, and agreeable to the common understanding of all men." That decision soon became the well-established law. In *Naben* v. *Miecock* (1684) (Skin. 183) LEVINZ, J., said he was " for taking words in their natural, genuine and usual sense, and common understanding, and not according to the witty constructions of lawyers, but according to the apprehension of bystanders." (And, see, *Somers* and *House*, Skin. 364.)

The publication imports no criminal or unprofessional or unethical conduct on the part of plaintiff, either in his capacity as a physician or in his individual capacity as a citizen. The fact that he is mentioned as the husband of Miss Frankel, the attorney, is surely no reflection upon his professional standing or his personal honesty.

Nor does the innuendo serve to save the complaint. An innuendo cannot enlarge the meaning of the language complained of, but may only explain and clarify it. (*O'Connell* v. *Press Pub. Co.*, 214 N. Y. 352; *Fleischmann* v. *Bennett*, 87 id. 231; *Shubert* v. *Variety, Inc.*, 128 Misc. 428.) In the innuendo the plaintiff has endeavored to stretch the language of the article and to twist and contort it into a meaning which it fails to convey to the ordinary reasonable mind. This is not the proper function of an innuendo. (*Fleischmann* v. *Bennett, supra.*)

As was said by the Appellate Division in *Barringer* v. *Sun Printing & Publishing Assn.* (160 App. Div. 691, 694): " The purpose of an innuendo is to explain language and ascribe to it the meaning which it was intended to convey, but the article cannot be extended or enlarged by an innuendo; and an innuendo

ascribing to a publication a meaning of which it is not fairly susceptible cannot make the article libelous. (*Parker* v. *Bennett*, 68 App. Div. 148; *Fleischmann* v. *Bennett*, 87 N. Y. 231; *Van Heusen* v. *Argenteau*, 194 id. 309; *Verbeck* v. *Duryea*, 36 Misc. Rep. 242; *Gibson* v. *Sun P. & P. Assn.*, 71 App. Div. 566.) "

The rule is stated in Odgers' Treatise on Libel and Slander (2d Eng. ed.) as follows (*100): "But an innuendo may not introduce new matter, or enlarge the natural meaning of words. It must not put upon the defendant's words a construction which they will not bear. It cannot alter or extend the sense of the words, or make that certain which is in fact uncertain. (*James* v. *Rutlech*, 4 Rep. 17.) If the words are *incapable* of the meaning ascribed to them by the innuendo, and are *prima facie* not actionable, the judge at the trial will stop the case."

In this view of the case it is not necessary to consider defendant's further contention that the complaint is insufficient because it contains no adequate allegation of special damages, under the authority of *O'Connell* v. *Press Pub. Co.* (*supra*).

After this motion was argued, *Campbell* v. *New York Evening Post, Inc.* (245 N. Y. 320) was decided by the unanimous Court of Appeals, which, writing by Judge POUND, carefully pointed out that the filing of pleadings, affidavits and the like is a public and official act in the course of judicial proceedings, and that if the reports thereof are fair and true and without evidence of malice such articles are privileged.

For these reasons it follows that defendant's motion must be granted and the complaint dismissed, with costs.