ARTHUR GARFIELD HAYS, Respondent, *v.* AMERICAN DEFENSE SOCIETY, INC., et al., Appellants.

(Argued September 30, 1929; decided November 26, 1929.)

*Clarence W. McKay* and *Merton E. Lewis* for appellants. The complaint is defective in that it fails to allege any special damages. (*Chrashley* v. *Press Publishing Co.*, 179 N. Y. 27; *Sumner* v. *Buel*, 12 Johns. 475; *O'Connell* v. *Press Pub. Co.*, 214 N. Y. 352; *Van Gerichten* v. *Seitz*, 94 App. Div. 130; *Fleischman* v. *Bennett*, 87 N. Y. 231; *Merlin* v. *Shields*, 171 N. Y. 384; *La Massena* v.

*Storm*, 62 App. Div. 150; *Philip Co.* v. *New Yorker-Staats-Zeitung*, 165 App. Div. 377; *Bosi* v. *New York Herald*, 33 Misc. Rep. 622; 58 App. Div. 619; *Hehmeyer* v. *Harpers Weekly*, 170 App. Div. 459.)

*Sidney Newborg* for respondent. The pamphlet is libelous *per se*. (Penal Law, §§ 161, 162; *People* v. *Gitlow*, 234 N. Y. 132; 268 U. S. 652; *Matter of Lithuanian Workers' Literature Soc.*, 196 App. Div. 262; *Van Gerichten* v. *Sitz*, 94 App. Div. 130; *Gilmartin* v. *Day*, 214 App. Div. 231; *Hearsts* v. *Staats Zeitung*, 71 Misc. Rep. 7; 144 App. Div. 896; *Triggs* v. *Sun Publishing Co.*, 179 N. Y. 144; *Woodhouse* v. *New York Evening Post*, 211 App. Div. 75; *Bennett* v. *Commercial Advertiser Assn.*, 230 N. Y. 125.) The libel is imputed to plaintiff. Individuals and not a class are libeled. (*Corrigan* v. *Bobbs-Merrill Co.*, 228 N. Y. 63; *Weston* v. *Commercial Advertiser Assn.*, 184 N. Y. 479; *Ryckman* v. *Delavan*, 25 Wend. 186; *Weiterhausen* v. *Croatian Printing, Inc.*, 151 Fed. Rep. 947; *Children* v. *Shinn*, 168 Iowa, 531; *Reilly* v. *Curtiss*, 83 N. J. L. 77; *Wofford* v. *Meeks*, 129 Ala. 349; *Maybee* v. *Fish*, 42 Barb. 324; *Macphail* v. *MacLeod*, 3 Sc. L. T. 91.) As the publication is libelous *per se*, the complaint is good although it fails to allege special damage. (*Davis* v. *Kelly*, 172 App. Div. 171; *MacDonald* v. *Sun Publishing Co.*, 111 App. Div. 465; *Morrison* v. *Smith*, 177 N. Y. 366.)

HUBBS, J. The complaint alleges that the defendants, in the fall of 1924, prepared, printed and published a pamphlet entitled " LaFollette-Socialism-Communism " and that said pamphlet contained false and defamatory matter about the plaintiff, that it was published maliciously with intent to injure him and to hold him up to public hatred, ridicule and scorn, and that it has damaged him. The complaint does not allege special damage. By innuendo the complaint alleges that the defendants,

in said pamphlet, charged that the plaintiff " was a believer in and advocate of the principles of revolution; that he believed in the same principles as the Communists, the Workers Party of America, the Trade Union Educational League, the Federated Farmer-Labor Party, the ' I. W. W.,' the Soviet Government of Russia, and others; that the plaintiff advocated, promoted and excited revolt against the institutions of our country; that he was engaged in revolutionary and seditious activities with the purpose of overthrowing by force and violence the institutions and Government of the United States; that the plaintiff was guilty of a crime, to wit, conspiring to overthrow the Government of the United States by force and violence; that the plaintiff was the dupe and tool of the aforementioned parties and their leaders." A copy of the pamphlet is annexed to the complaint and by reference made a part of it.

If in fact the pamphlet does charge the plaintiff with the things set forth in the innuendo, a good cause of action is stated and the complaint must be sustained. If, on the other hand, a fair reading of the pamphlet discloses that it does not charge the plaintiff with the things alleged in the innuendo, the complaint must be dismissed.

The plaintiff cannot enlarge or change the language used in the pamphlet by innuendo. The purpose of the innuendo is to explain the application of the words used. Words which are not libelous in themselves cannot be made so by innuendo. (*Fleischmann* v. *Bennett*, 87 N. Y. 231; *O'Connell* v. *Press Pub. Co.*, 214 N. Y. 352, at 360.)

In order to constitute a libel, the words used in the alleged libelous article must refer to the plaintiff. Rule 96 of the Rules of Civil Practice, formerly section 535 of the Code of Civil Procedure, provides that " The plaintiff may state in general terms that such matter was published or spoken concerning him." And it is unneces-

sary to state in detail the facts which show that the plaintiff is a person intended to be designated in the pamphlet as a Red, a criminal or otherwise, as charged in the innuendo. Still, if the pamphlet does not in fact charge the plaintiff with the things set forth in the innuendo, and when fairly read it appears that the plaintiff is not so charged, its meaning cannot be extended by innuendo to make it constitute a libel against him. (*Fleischmann* v. *Bennett, supra; Barringer* v. *Sun Printing & Publishing Assn.*, 160 App. Div. 691.) If " it appears upon the face of the complaint that the libel was not published of and concerning the plaintiff " the complaint fails to state a cause of action. (*Corr* v. *Sun Printing & Publishing Assn.*, 177 N. Y. 131.)

The purpose of the pamphlet was political. It was written to aid and published for the purpose of assisting in the defeat of LaFollette, a candidate for President in 1924; also, to stimulate in the minds of its readers an active interest in combating the growth of radicalism in this country.

The pamphlet in substance states that various radicals and radical organizations in different parts of the United States working in harmony under different names have as their purpose the precipitation of an armed revolution in the United States and the overthrow of the government of the United States by force and arms; the establishing of a dictatorship of the proletariat in the United States; and the subservience of the welfare of the United States and of its government to the communist Soviet government of Russia; further, that various radical groups with the above purpose of sedition and revolution are operated under various names and that among said radical groups are three classes of organizations:

*First*, the Communists, who are endeavoring to overthrow the government by force.

*Second*, the Workers Party of America, Trade Union Educational League, Federated Farmer-Labor party,

Friends of Soviet Russia, Young Workers League of America and the " I. W. W.," and that all of said organizations clearly understand the line of march on which they are moving and understand and appreciate that their purpose and activities are in aid of the Communist party.

*Third,* American Civil Liberties Union, consisting of 124 members, and Committee of 48, consisting of 33 members, of which organizations the plaintiff is a member. The pamphlet also refers to certain other organizations in this third class.

It states that the American Civil Liberties Union (of which plaintiff is a member) is aiding the Trade Union Educational League (of the second class) by means of interlocking directorates, and that listed with the Federated Farmer-Labor party (of the second class) is the Committee of 48 (of which plaintiff is a member). It does not state that the plaintiff is a member of the Communist party, or of any organization of the second class which clearly understands the line of march. Nowhere in the pamphlet is it stated that the plaintiff is a Red; that he is a criminal; that he is engaged in a movement to overthrow the government, or in any of the things set forth in the innuendo. It does state: " Beyond question many of the members of the organizations shackled by the interlocking directorates have no appreciation of their destination. Many of the organizations were doubtless founded by people actuated by feeling a real need for improved conditions or by humanitarian impulses." It does not state whether the plaintiff is a person " actuated by feeling a real need for improved conditions or by humanitarian impulses " or otherwise. The pamphlet further states that " the best way to discover ' useful workers ' and ' skilled leadership ' in well articulated associations, societies and leagues which relate themselves to revolution indirectly by interest in similar activities is to observe the cross-beam directorates (see chart of directorates)."

The complaint alleges that the chart to directorates referred to is contained in said pamphlet under the title "Index to Directorates;" that this index contains a list of 396 names to which are attached key numbers and key letters through which under a so-called "Index to Organizations" there may be traced the alleged interlocking relationship through the so-called interlocking directorates; and that the plaintiff's name is listed in said "Index to Directorates" with symbols attached thereto indicating that the plaintiff is a director of the Committee of 48 and of the American Civil Liberties Union. It further alleges that the plaintiff is a member of the executive committee of the Committee of 48 and of the American Civil Liberties Union; that the purpose of the Committee of 48 is to organize into a political party voters who have lost faith in the Republican and Democratic parties and who desire political and economic changes in accordance with the spirit of our institutions; that the success of said committee depends largely upon the good will of the public and a fair representation of its program; that the plaintiff is an attorney at law actively engaged in practice in the city of New York and has devoted a large part of his time and energy to the furtherance of the work of said committee. It refers to charts at the end of the pamphlet, the first of which is entitled "Index to Directorates" and the second of which is entitled "Index to Organizations."

A careful reading of the pamphlet shows that the plaintiff is nowhere named therein except that his name is contained in the list entitled "Index to Directorates" with symbols indicating connection with the Committee of 48 and the American Civil Liberties Union. In order to find any reference to the plaintiff in the text of the pamphlet, it must be held that the aforementioned "Index to Directorates" is intended to identify the persons mentioned in said list as directors of the organizations indicated by the symbols following their names. If the

plaintiff's name in the index with the symbols following it does not show that he is charged with being a director of the two organizations of which he is a member, then he is not in any way referred to in the text of the pamphlet as a person engaged in the unlawful purposes criticised by the author of the pamphlet. Plaintiff is not referred to in the pamphlet as a director of any of the organizations named therein. A reference to the so-called " Index to Directorates " and " Index to Organizations " discloses that the only indication to plaintiff therein is that he is *connected with* certain of the organizations named. The note immediately following the title of said " Index to Directorates " says: " To secure names *of organizations of any person* listed below, take the letters following same and then turn to the following table, ' Index to Organizations.' For example: Miss Jane Addams is found to be connected with A. B. L. etc." The note immediately following the title of said " Index to Organizations " says: " To secure the names of the individuals *connected with* the organizations below listed, take the numbers following and refer to like numbers in preceding table of " Index to Directorates." The reference in each case is to persons " *connected with* " and not to " *directors of* " the listed organizations.

It is nowhere stated that the persons named in the so-called " Index to Directorates " are each members of the board of directors of the organizations referred to. On the other hand, there are many references in the pamphlet to individuals in the index which indicate an intention to charge those named as being *members of* the named organizations and *not directors* thereof.

The pamphlet in effect states that the Communists claim that the realization of socialism is the first step toward a Communist commonwealth; that in the United States are certain organizations including the Workers Party of America, the " I. W. W." the Friends of Soviet

Russia, and others, clearly understanding the line of march on which they are moving deliberately toward world revolution and that directly or indirectly associated with these organizations are many others classed as " useful workers " along the line of march, organizations connected with the open and avowed revolutionary business through the system of interlocking directorates; that among these last mentioned organizations are the American Civil Liberties Union and the Committee of 48 of which plaintiff is a member, but many of these organizations were doubtless founded by people actuated by feeling a real need for improved social conditions or by humanitarian impulses; that beyond question many of the members of organizations shackled by the interlocking directorates have no appreciation of their destination; that to further and extend the united front desired by clever conspirators of Moscow before launching a revolution in this country, *the ring leaders in the interlocking directorates* are devoting their energies and that Red Radicals, near Reds and Pinks of various hues are numbered *in the interlocking directorates* of organizations which are moving, though by devious paths, in the direction of armed revolution in the United States.

The plaintiff is not charged with being a " ring leader in the interlocking directorates," and perhaps he is not charged with being a director, but assuming that the plaintiff is charged with being a director of the organizations to which he admits he belongs, the charge made in the pamphlet is no more than that certain of the directors of the organizations to which he belongs and of other organizations are Reds or Radicals. It further charges that certain of the persons interested in these various organizations are adepts and certain are dupes, and that the dupes are being used by being placed actively to work furthering some idea which if put into practice would contribute to the general purpose of the Communists. This is far from charging the plaintiff specifically

with being an adept or a dupe. It does not seem to us that the pamphlet contains matter which is libelous to persons not specifically named in the pamphlet other than in the list entitled " Index to Directorates." It is an argument that the two organizations to which plaintiff belongs have a tendency to encourage socialism; that one aids the Trade Union Educational League and one is listed with the Federated Farmer Labor party, which last named organizations support the Communists and clearly understand the line of march. It charges nothing in the way of anarchistic acts as against the organizations to which the plaintiff belongs and it merely calls attention to the fact that the plaintiff is connected with two organizations which are in the line having a tendency by indirection to encourage Socialism. It is a mere expression of opinion by the writer of the article as to the tendency of perfectly legitimate things. It does say that some of the directors of these organizations are members of the associations that are illegal, but it does not say that all of those named are members of the illegal associations.

The article does not charge a violation of the State or of the Federal statutes in regard to criminal anarchy either by the plaintiff or by the associations to which he belongs.

Under the State statute, to charge the members of either the Committee of 48 or the American Civil Liberties Union with the commission of a crime, it would be necessary to charge that such members either organized or helped to organize, became members of or voluntarily assembled with associations formed to teach or advocate criminal anarchy, the doctrine that organized government should be overthrown by violence, by assassination of the executive head or any of the executive officials or by any unlawful means. (Penal Law, §§ 160, 161.) No such purpose is attributed to either of said organizations in the portions of the pamphlet devoted to an exposition of their purposes.

The Federal statute limits the offense (seditious conspiracy) to an attempt by force to overthrow the government. (Mason's U. S. Code, Annotated, title 18, ch. 1, § 6; Criminal Code, § 6; R. S. § 5336; Mar. 4, 1909, ch. 321, § 6; 35 Stat. 1089.) There is no charge of such an act on the part of the plaintiff or the organizations to which he belongs.

The pamphlet undertakes to state the platform and purposes of the American Civil Liberties Union and of the Committee of 48, the two organizations of which the plaintiff is a member. So far as appears from the article, the two organizations are perfectly legitimate. They do not advocate Communism, or any other unlawful purpose. The charge that the plaintiff is a member of those organizations clearly does not charge a libel. To charge that the ringleaders of the directorates of those organizations favor Socialism, and thereby promote the cause of Communism, does not charge that the plaintiff, who is a member, is a Red, is guilty of crime or engaged in any unlawful or improper undertaking. The pamphlet in effect states that because those organizations advocate free speech and other so-called liberal doctrines, they are, by their attitude, tending to encourage radicalism and Communism. That is a mere expression of the author's opinion as to the effect of the publication of the principles which the organizations advocate. It falls far short of charging a libel against the plaintiff, a member of such organizations. It does not charge him with any illegal or disgraceful act.

No one, from a reading of the article, would be justified in saying that it charges that the plaintiff is a radical, a Red, engaged in an attempt to overthrow the government, or in any conduct which holds him up to scorn or ridicule. The allegations of the complaint which so charge are limited by the article itself, which is made a part of the complaint. It contains no language which constitutes a libel against the plaintiff.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division and the question certified answered in the negative.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN and KELLOGG, JJ., concur; O'BRIEN, J., dissents.

Ordered accordingly.