JOHN A. DEVANY, JR., Plaintiff, *v.* ALBERT SHULMAN et al., Defendants.

Supreme Court, Special Term, Bronx County, December 6, 1944.

*S. Philip Cohen* for Albert Shulman, defendant.
*Shanley, Purcell & McKegney* for plaintiff.

McLaughlin, J. Motion by defendant Shulman to dismiss the complaint on the ground of legal insufficiency.

This is a suit in libel, based on the publication in the July 20, 1944, issue of the *Jewish Review* of an article in which plaintiff asserts he is accused of being anti-Semitic, aligned with the Nazis and a supporter of Fascism.

The article in question, an editorial, criticizes the political views and the record of the plaintiff, a candidate in a congressional primary campaign. Nothing, however, can be found in it which in any way reflects on the character of the plaintiff or his private life.

There appears to be no basis to the anti-Semitic charge. Plaintiff argues that the headline across the top of this issue reading " Scientists Probe Causes and Cures of Anti-Semitism in the United States " may be used to sustain the allegations of the complaint. This headline clearly relates to the article on the right side of the page and has no connection with the article headed " A Primary Duty ", which treats of the primary contest in which the plaintiff was seeking to be designated as the nominee of the Democratic party for the office of Congressman in the 25th Congressional District (New York). The body of this latter article contains nothing to substantiate, directly or by inference, the claim of the plaintiff that he was branded with anti-Semitism, or even to connect him with any such beliefs.

The article, however, denies that there is any religious issue but states that plaintiff would like to inject one into the campaign. It states: " This is not a religious issue. Devany would like to make it one. Both he and his henchmen — in their pursuit of this nomination — have unfailingly injected a religious atmosphere into a political campaign and have attempted to becloud the issue by appeals to the ignorant, the prejudiced and the uninformed." These words constitute fair comment or fair criticism of a candidate seeking public office. Criticism of a public official as to matters of public interest and concern is privileged so long as it is fair and with an honest purpose and not intemperate and malicious, even though such criticism be embarrassing to the public official. (*Hall* v. *Binghamton Press Co.*, 263 App. Div. 403.) There would appear to be nothing malicious in the statement made with respect to the plaintiff and his supporters in having injected a religious atmosphere into a political campaign. The article merely expresses the opinion of the writer that the plaintiff and his supporters would like to have the primary campaign decided as a religious issue. There does not appear to be any reason why the writer

of an editorial should be barred from expressing his views as to a candidate. This is not an attack on the individual but rather on his political beliefs and methods. In *Triggs* v. *Sun Printing & Pub. Assn.* (179 N. Y. 144, 155, 156), it is stated: " The distinction between criticism and defamation is that criticism deals only with such things as invite public attention or call for public comment, and does not follow a public man into his private life and pry into his domestic concerns. It never attacks the individual, but only his work."

Applying that test to the article here, it would appear that the opinion expressed by the writer is fair criticism, with an honest purpose, of a candidate for public office.

The charge that for the past ten years the plaintiff has misrepresented his constituents in the New York State Assembly is certainly not libelous because it is a mere expression of opinion with respect to the actions and record of a person in public office. That is always permitted as fair comment. (*Hall* v. *Binghamton Press Co., supra.*)

Nor does the article as a whole sustain in any way the claim made by the plaintiff that it pictures him as aligned with the Nazis or as a supporter of Fascism. It is plain that it is an appeal for the support of President Roosevelt by advocating the election of Congressman Buckley. Behind it all is a plea to citizens to vote for Buckley because of his support of the Roosevelt administration. The most extreme criticism in the article is that Assemblyman Devany has aligned himself with the haters of the President. This is not libel and many Americans are in this class. It is equally true that many others who seem to be in the majority regard the President in a far different light. It is to be noted that the article stresses that Assemblyman Devany is reactionary while Buckley has supported the progressive legislation advocated by the President. The court can see nothing libelous, either directly or by inference, in that assertion. It would be destroying entirely the doctrine of fair comment in a political campaign if a paper had to respond in damages for saying that Fascist-minded voters are against one candidate and for his opponent. The same holds true as to whether a candidate is a progressive or a conservative to the extent of " standing for reaction."

The remainder of the article says that a mistake would be made if Mr. Buckley were defeated because of his record. It also adds that Mr. Devany's selection in the primary would be a victory for Fascism. Then follows the reason why the voters

appealed to should support Mr. Buckley. It is not libelous to urge people to vote for Congressman Buckley in order to support the President. Nor is it libelous to argue that this is the way to defeat Fascism and to prevent what happened in certain parts of Europe. No inference in the article that Mr. Devany was a Fascist could flow from this, and the only possible inference that could be indulged in is that his opposition to the Roosevelt policies would be for the benefit of the Fascists. It may be libelous in times such as these to call or write of a man that he is a Communist or a Fascist (*Hays v. American Defense Society*, 252 N. Y. 266; *Luotto v. Field*, N. Y. L. J., June 8, 1944, p. 2214, col. 3), but that has not been done here. There is nothing in this article which would make it a question of fact for the jury to determine as to whether it states that Assemblyman Devany is a Fascist. The words used do not charge or connect the plaintiff with anti-Semitism, Nazism or Fascism. The only reasonable conclusion to be drawn from this portion of the article and the article as a whole is that the only way to support President Roosevelt in the fight against Fascism is to support Congressman Buckley in the primary election.

The principal authorities relied upon by plaintiff are not in point and involve facts different from those in the present case. In the article under consideration there is no charge of any kind made against the plaintiff's character, his profession or his private life.

In *Levy v. Gelber* (175 Misc. 746) plaintiff, a lawyer, was charged with splitting fees, demanding excessive fees, being disloyal to the best interests of his client and, in addition, that he was a Nazi and a Communist. These statements clearly were such as would tend to injure the plaintiff in his profession. In the present case, plaintiff is a candidate for public office. The article makes no attempt to charge him with any moral turpitude. It merely criticizes him politically but charges him with nothing that is libelous.

In *Lunn v. Littauer* (187 App. Div. 808) a candidate for Congress was charged directly in the article with being the agent of selfish and designing business men seeking to gain big money through his alleged influence in procuring shipping for their own products in disregard of the rights of the nation. In effect, this article accused the plaintiff of selling his high office to scheming business men. It clearly was a direct charge of moral turpitude, which is lacking in the case at bar.

*Hryhorijiv v. Winchell* (180 Misc. 574), relied upon by plaintiff, is not in point. In that case the plaintiffs were lecturers and

writers. They were charged with connections with Nazism. Such charges injured their reputation in their calling. The plaintiffs in that case were not candidates for public office as is the plaintiff in the present action. The article here amounts to a comment upon the plaintiff's stand as a progressive or a reactionary and the comfort his election would give to certain people who were supporting him and who also were against the President.

*Cortright* v. *Anderson* (208 App. Div. 1, 3), also relied upon by the plaintiff, is no authority for sustaining the present complaint. In that case the article, as the court said, went " beyond the limits of fair and honest criticism." It was held that, while it is not libel to charge a candidate for the Assembly with being " wet ", nevertheless, when applied to a candidate running on the Prohibition ticket it will constitute libel if special damages are alleged. The basis for that holding was that plaintiff was charged " with being untrue to the principles of the party whose candidate he was ". The article thus went further than mere fair criticism of a candidate. It attacked the plaintiff morally for it accused him of perpetrating a fraud on his own party. The situation is different than in the present case where the article in question amounts to an appeal to Roosevelt supporters to vote in the Democratic primary for the plaintiff's opponent. It criticizes the plaintiff's political views and his record in public office. It also criticizes the plaintiff's supporters. On the other hand, it praises the record and political views of plaintiff's opponent. There is nothing at all in the article which goes beyond fair criticism of a candidate seeking public office.

Motion to dismiss the complaint is granted. Settle order.