HORNELL BROADCASTING CORPORATION, Respondent, v. A. C. NIELSEN COMPANY et al., Appellants.

Fourth Department, May 13, 1959.

Shults & Shults (*John J. Horey* and *William A. Argentieri* of counsel), for Ra-Tel Broadcasters, Inc., appellant.

*Coudert Brothers* (*Larrabee M. Johnson, Carleton E. Eldridge, Jr.,* and *Joseph A. McManus* of counsel), for A. C. Nielsen Company, appellant.

*Albert E. Hollis* and *William J. Holbrook* for respondent.

GOLDMAN, J.   This is an appeal from Special Term's denial of defendants' motions to dismiss the amended complaint or in the alternative to require plaintiff to separately state and number.   Plaintiff pleads three causes of action growing out of an alleged libel by the defendants.   In the first cause of action plaintiff claims injury to its business, loss of advertising accounts and inability to sell advertising time, all to its damage in the sum of $25,000.   The second cause of action repeats and realleges all of the allegations of the first cause of action and demands $10,000 for damage to its reputation in the advertising field and among the radio listening public.   The last cause of action similarly realleges all of the allegations of the first and second causes of action and seeks $15,000 in damages for moneys which plaintiff asserts it has been compelled to spend, and will be required to spend in the future, to recover its former reputation and business as a result of the alleged libel.

Special Term in denying defendants' motions held that " Construing the amended complaint broadly and liberally and accepting all the facts alleged as being true, it appears that the pleading sufficiently states a cause of action for libel against the

two named defendants as joint tort-feasors." It further found that the statement complained of " is libelous *per se* and special damages need not be alleged or proved ". With this conclusion we cannot agree.

Defendant A. C. Nielsen Company is engaged, among other activities, in the business of conducting surveys for the purpose of measuring and reporting audience coverage of radio stations such as the plaintiff. The complaint alleges that defendant Nielsen circulated among the trade the statistics of an alleged survey which revealed that the defendant Ra-Tel Broadcasters, Inc., whose call letters are WWHG, had a listening audience approximately twice as great as the plaintiff station, whose call letters are WLEA. On May 13 and 14, 1957 defendant Ra-Tel published two advertisements in a Hornell, New York newspaper which purported to disclose the findings of the defendant Nielsen survey. The first advertisement explained what radio ratings are, how surveys are conducted, and particularly who the Nielsen Company is and how its coverage survey operates. This first advertisement concluded by stating that on the following day the results of the Nielsen Company coverage survey No. 2 would be published. On the next day the following advertisement was inserted in the newspaper by defendant Ra-Tel:

" YOUR MOST LISTENED TO STATION "
W W H G  AM–FM

---

According to the Latest
NIELSEN COVERAGE SURVEY No. 2
Weekly Coverage
Steuben County — 28,800 Total Homes in Area

Homes Reached

WWHG ................................11,630
Station B (Hornell) .................... 6,570
Station C (Corning) ................... 8,220

It is undisputed that " Station B (Hornell) " was intended to and did refer to plaintiff.

The gravamen of plaintiff's complaint is set forth in paragraphs 9 and 10. We find first the statement, upon information and belief, that defendant Nielsen in fact made no survey in December of 1956 and " no accurate survey was made " at any other time. This allegation is then followed by the unqualified statement that the figures contained in the survey " were and are false and misleading and were known by the defendants

at the time of their publication to be false and misleading, or, in the alternative were published and circulated by the defendants without any proper investigation and without any foundation in fact and were prepared, ' published and circulated wilfully,' wrongfully and maliciously for the purpose of damaging the business of the plaintiff and of damaging its reputation among radio advertisers and radio listeners ". It is upon these conclusory statements, pleaded in the alternative, that plaintiff asserts it has been libeled.

It is undisputed that upon a motion attacking the sufficiency of the complaint we take the allegations as true and examine them to see if they spell out a sufficient cause of action. Moreover, on a motion of this kind in a libel action, the court is not concerned with the ultimate outcome of the action, but whether if by any reasonable view the words are capable of a defamatory meaning. (See *Foley* v. *Press Pub. Co.*, 226 App. Div. 535; *Mencher* v. *Chesley*, 297 N. Y. 94, 102; *Balabanoff* v. *Hearst Cons. Pub.*, 294 N. Y. 351, 356; *Katapodis* v. *Brooklyn Spectator*, 287 N. Y. 17, 21; *Hoeppner* v. *Dunkirk Print. Co.*, 254 N. Y. 95, 105.) True it is, that if the meaning of the words is ambiguous and could be construed as libelous the question could not be determined upon a motion of this nature but would require a jury determination.

That a corporation may maintain an action for libel where the publication assails its management, credit or business, or holds it up to ridicule, contempt or disgrace, has been clearly established. (*First Nat. Bank* v. *Winters*, 225 N. Y. 47.) Unless the " language is of so defamatory a nature as to directly affect credit and to occasion pecuniary injury " (*Norske Ameriekalinje* v. *Sun Print. & Pub. Assn.*, 226 N. Y. 1, 6) allegations of special damage are necessary. (See, also, *Reporters' Assn.* v. *Sun Print. & Pub. Assn.*, 186 N. Y. 437; *Marlin Fire Arms Co.* v. *Shields*, 171 N. Y. 384; *O'Connell* v. *Press Pub. Co.*, 214 N. Y. 352; *Sydney* v. *MacFadden Newspaper Pub. Corp.*, 242 N. Y. 208; *Frawley Chem. Corp.* v. *Larson Co. Inc.*, 274 App. Div. 643.)

Reading the publication complained of as a whole and giving the words of the publication their fair meaning (*National Variety Artists* v. *Mosconi*, 169 Misc. 982; *Adirondack Record* v. *Lawrence*, 202 App. Div. 251; *Tracy* v. *Newsday*, 5 N Y 2d 134), we find that the publication does not hold up WLEA — Station B (Hornell) — to ridicule, scorn or contempt, does not impugn its reputation, management or credit. No dishonesty or fraud is attributed to plaintiff in the publications.

The substance of the advertisements in the record before us, is not susceptible of a libelous meaning and no explanation

concerning the falsity of the publication can make words nonlibelous, libelous. (*Tracy* v. *Newsday, supra*; *Hays* v. *American Defense Soc.*, 252 N. Y. 266; *Gurtler* v. *Union Parts Mfg. Co.*, 285 App. Div. 643, affd. 1 N Y 2d 5; *Levine* v. *Teitler*, 6 Misc 2d 592; Seelman, Law of Libel and Slander, ch. XXII, p. 417 *et seq.*) Certainly the language of the publications does not, per se, carry with it any imputation of dishonesty or bad repute, or for that matter does not even insinuate fraud, misconduct or anything disparaging to the plaintiff's general reputation. The reader is simply informed of the statistical data which the Nielsen report disclosed. If, in fact, it was not prepared in good faith, if it was done in an effort to undermine public confidence in plaintiff, then there is ample remedy for the plaintiff in the field of torts, but not in an action for libel. The conclusory statements of bad faith in the complaint need facts to support them, but even such facts would not make the publications actionable as being libelous per se. The language is plain, simple and unambiguous and not susceptible of a defamatory imputation. Under these circumstances, there is no justification for permitting the complaint to stand and to be submitted to a jury to determine the meaning of the publications. As was early stated in *Morrison* v. *Smith* (177 N. Y. 366, 369) " When the defamatory meaning is not apparent, innuendo is necessary. If the words are incapable of the meaning ascribed to them by the innuendo and are, *prima facie,* not actionable, the complaint should be dismissed ".

In this appeal it would serve no useful purpose for this court to speculate as to the nature of the alleged tort, if any. (See *Penn-Ohio Steel Corp.* v. *Allis-Chalmers Mfg. Co.*, 7 A D 2d 441.) Having arrived at the conclusion that the publications are not libelous, the complaint is insufficient on its face and the motion to dismiss should have been granted. We believe, however, that plaintiff should have a further opportunity to replead, if so advised.

All concur. Present — McCurn, P. J., Kimball, Bastow, Goldman and Halpern, JJ.

Orders reversed, with $10 costs and disbursements and motions granted with $10 costs, with leave to plaintiff to serve a second amended complaint, if so advised, within 20 days after service of copies of the orders herein.