CHRISTOPHER J. O'CONNELL, Respondent, *v.* THE PRESS PUBLISHING COMPANY, Appellant.

Libel — when publication is not libelous per se — specific facts showing damage from such libel must be alleged and proved — publication of statement that plaintiff invented a device which may be used for criminal purposes not a libel per se.

1. A publication is not in and of itself libelous unless the language as a whole, considered in its ordinary meaning, naturally and proximately was so injurious to the plaintiff that the court will presume, without any proof, that his reputation or credit has been thereby impaired.

2. A publisher of a libel not defamatory upon its face, and defamatory by virtue of extrinsic facts, is liable only for the pecuniary damage which legally resulted from the publication, and the

facts showing such damage must be fully and specifically set forth in the complaint. General allegations of damage are not sufficient.

3. If the matter complained of is actionable *per se* no inducement or averment of extrinsic facts is necessary. Innuendoes in a complaint cannot give the language of the publication a broader application, because it is not the office of an innuendo to graft a meaning upon or to enlarge the matter set forth but to explain the application of the words used.

4. Publication of a statement that plaintiff invented a device which may be used for criminal purposes, that he showed it to a person in whose business it might be so used, and that it was used, do not, within reasonable and fair contemplation or understanding, tend to incriminate or disgrace the inventor. The plaintiff was not charged by such a publication with an illegal or immoral act or exposed to contempt, ridicule or disgrace.

*O'Connell* v. *Press Publishing Co.*, 155 App. Div. 918, reversed.

(Argued January 14, 1915; decided March 23, 1915.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered February 25, 1913, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Howard Taylor* and *Charles B. Brophy* for appellant. The matters of inducement set forth in this complaint could not make out a cause of action for libel unless there were at the same time a proper allegation of special damage. (Townshend on Slander & Libel [4th ed.], §§ 308, 345; *Van Heusen* v. *Argentau*, 194 N. Y. 309; *Crashley* v. *Press Pub. Co.*, 179 N. Y. 27; *McNamara* v. *Goldan*, 194 N. Y. 315.) Neither publication in any meaning which could be spelled from the article itself charged the plaintiff with committing a crime. (*Rossiter* v. *N. Y. Press Co.*, 141 App. Div. 339.) As the articles fail to

charge O'Connell with the commission of any crime, so likewise they fail to make any other statements against him that would be regarded in law as defamatory, or that a jury might be permitted to say were libelous *per se.* (*Van Heusen* v. *Argentau,* 194 N. Y. 309; *Cohen* v. *N. Y. Times Co.,* 153 App. Div. 242; *Armstrong* v. *Sun P. & P. Assn.,* 137 App. Div. 828; *Crashley* v. *Press Pub. Co.;* 179 N. Y. 27.)

*Henry F. Cochrane* and *Hersey Egginton* for respondent. The test of a complaint for libel, whether to the mind of an intelligent man the tenor of the article and the language used naturally import a criminal or disgraceful charge, is completely fulfilled by the complaint in this action. (*Cooper* v. *Greeley,* 1 Den. 358; *Spencer* v. *Southwick,* 11 Johns. 592; *Sanderson* v. *Caldwell,* 45 N. Y. 398; *More* v. *Bennett,* 48 N. Y. 472; *Morse* v. *Press Pub.* Co., 49 App. Div. 375; *Cochrane* v. *Melande,* 59 Wis. 207; *Diener* v. *Star C. P. Co.,* 230 Mo. 613; *Edwards* v. *San Jose P. & P. Co.,* 99 Cal. 431; *Schofield* v. *M. F. Press,* 2 L. R. A. 691; *Van Ingen* v. *Mail & Express,* 14 Misc. Rep. 326; 156 N. Y. 376.) The articles are plainly libelous *per se.* (*Levey* v. *Brooklyn Stand. Union Co.,* 65 Misc. Rep. 373; 202 N. Y. 555; *Weston* v. *Commercial Ad. Assn.,* 184 N. Y. 479; *Gates* v. *N. Y. Recorder Co.,* 155 N. Y. 229; *Morrison* v. *Smith,* 177 N. Y. 366; *U. S.* v. *Cargo of Sugar,* 3 Sawy. 46; *U. S.* v. *Legg,* 105 Fed. Rep. 930.)

COLLIN, J. The question before us is, does the complaint state facts sufficient to constitute a cause of action ?

The action is for libel consisting of publications, concededly identical in substance and import, by the defendant in its newspapers, *The World* and *The Evening World,* of December 10, 1909. The publication in *The World,* excepting immaterial parts, was:

"Fraud indictment near for officer of Sugar Trust.
    Federal Grand Jury has evidence, gained from
    men now on trial, implicating him in weighing
    trickery.  One witness is Inventor of 'Corset
    Steel' Spring.    Weigher testifies that Spitzer
    told him to 'See Bendernagel and get an
    Envelope.'"

"It developed yesterday that while Henry L. Stimson
and some of his assistants have been introducing testi-
mony against minor officials of the Sugar Trust on one
floor of the Federal Building other assistant prosecutors
have been endeavoring to indict men 'higher up' before
the Federal Grand Jury on another floor of the building.

"'The World' is in a position to state that evidence has
been adduced before the Federal Grand Jury which will
result in the indictment of an official of the Sugar Trust
for the very frauds, the perpetration of which now forms
the basis of the criminal cases against minor officials, and
that these indictments will be based, in part at least, on
the evidence of one or more of the men now on trial.

"On Wednesday Judge Martin, of Vermont, who is
trying the cases of Bendernagel, Spitzer and the four
checkers, swore in the Federal Grand Jury for December.
One of the first witnesses examined was John H. Thomp-
son, a clerk at 117 Wall Street, the office of the Sugar
Trust, who had appeared before the petty jury hearing
the cases against Spitzer, Bendernagel and others.

"INSTRUCTED BY TRUST OFFICIAL.

"Thompson, it is understood, made known the official
of the Sugar Trust upon whose acquiescence he paid the
bills of the sugar shippers, which were based, not upon
the Government weights, but upon the weights returned
by the city weighers.   He declared distinctly that he
acted under instructions, and by his testimony an official
of the trust is implicated in the frauds.

"The December Grand Jury also examined a witness

named O'Connell, who has not appeared in the criminal trial. It is said he testified to having invented the corset steel spring device and to having shown it to an official of the trust, who referred him to Oliver Spitzer, dock superintendent. His testimony, it is understood, corroborated Thompson's to an extent.

" That action against some official higher up than Bendernagel was not taken by the previous Grand Jury is said to have been due almost entirely to the action of Breczinzski, the former treasury agent, who, with Richard Parr, was on the Sugar Trust piers when the raid was made on the crooked scales on Nov. 20, 1907. * * *

### "TOLD TO 'SEE BENDERNAGEL.'

" Prior to the argument the Government had rested after several witnesses had testified. One was Thomas D. Hyatt, a weigher, who had taken charge of the district, including Havemeyer & Elder's refinery in October, 1897. He said:

" ' Mr. Spitzer approached me and asked me to come up to the office and meet Mr. Bendernagel. I declined. I asked what they were going to charge as rent for the two offices which the weighers were to occupy.' Spitzer said, ' Oh, never mind that. We usually give that to the head weigher and a good deal more besides. You come to the office at the end of the month and Bendernagel will hand you an envelope. You need only shake hands with him, you don't even have to speak to him.'

" ' I declined again, and told him that I would rather wait a month or two until they could see how they liked my administration.' Spitzer said: ' We don't do any business with the assistant weighers; we do it all with the head weighers.' * * *'

" Another witness was Harvey E. Miller of the Fairbanks Scale Company, who testified that in his opinion the scales used on the sugar piers had been changed since they were bought. In examining them, he says he found

bolt holes showing that the scales originally had a longer beam than they had when the spring was used.

"The trial will be continued to-day."

The respondent asserts that each publication charged the plaintiff with the commission of the crime and with aiding and assisting others in the commission of the crime of making or attempting to make an entry of imported merchandise by means of false or fraudulent practices or appliances or by means of false or fraudulent statements, as created by the act of Congress of June 10, 1890, section 9, which provides:

"That if any owner, importer, consignee, agent, or other person shall make or attempt to make any entry of imported merchandise by means of any fraudulent or false invoice, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or shall be guilty of any willful act or omission by means whereof the United States shall be deprived of the lawful duty, or any portion thereof, accruing upon the merchandise, or any portion thereof, embraced or referred to in such invoice, affidavit, letter, paper, or statement, or affected by such act or omission    *    *    *    , such person shall, upon conviction, be fined for each offense a sum not exceeding five thousand dollars, or be imprisoned for a time not exceeding two years, or both, in the discretion of the Court."

In connection therewith, the respondent invokes sections 5440 and 5445 of the Revised Statutes of the United States, as follows:

"If two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years or to both fine

and imprisonment, in the discretion of the Court." (Section 5440.)

" Every person who, by any means whatever, knowingly effects or aids in effecting any entry of any goods, wares or merchandise at less than the true weight or measure thereof, or upon a false classification thereof as to quality or value, or by the payment of less than the amount of duty legally due thereon, shall be fined not more than five thousand dollars, or be imprisoned not more than two years, or both." (Section 5445.)

The appellant asserts that either publication is not a libel *per se* or upon its face, and if a libel, is so only by reason of the facts extrinsic to it and alleged in the complaint, and the complaint does not allege that the publication caused the respondent special damage. The appellant then invokes the established rules of law that (a) a publisher of a libel not defamatory upon its face, and defamatory by virtue of extrinsic facts is liable only for the pecuniary damage which legally resulted from the publication, and (b) the facts showing such damage must be fully and specifically set forth in the complaint. General allegations of damage are not sufficient. (*Bassell* v. *Elmore,* 48 N. Y. 561; *Stone* v. *Cooper,* 2 Denio, 293, 299; *Crashley* v. *Press Pub. Co.,* 179 N. Y. 27; *McNamara* v. *Goldan,* 194 N. Y. 315.) Indisputably, the present complaint contains only general allegations of damage. Therefore, we must determine whether or not the publication in and of itself was libelous.

It was not in and of itself libelous unless the language as a whole, considered in its ordinary meaning, naturally and proximately was so injurious to the plaintiff that the court will presume, without any proof, that his reputation or credit has been thereby impaired. The language and the innuendoes of the complaint informed the readers that a Federal grand jury was hearing and considering evidence tending to incriminate for fraud in weighing imported sugar an officer of the American Sugar Com-

pany and that a trial of certain minor officials or employees of the company for fraudulent practices in weighing was proceeding in a Federal court; that the plaintiff was examined as a witness before the grand jury and testified that he invented the corset steel spring device and showed it to an official of the company, who referred him to the dock superintendent, who was one of the officials or employees upon trial, and his testimony corroborated to an extent that of another witness who made known the official of the company upon whose instructions he paid the bills of the sugar shippers, which were based, not upon the government weights, but upon the weights returned by the city weighers; that action "against some official higher up" was not taken by a previous grand jury was due to a difference between an United States treasury agent and Richard Parr, who were on the piers of the company when the raid was made on the crooked scales on November 20, 1907; that another witness testified that the scales used on the piers had been changed since they were purchased; "in examining them, he said, he found bolt holes showing that the scales originally had a longer beam than they had when the spring was used."

The obvious intent and import of the publication is to inform readers that a prominent officer of the company was being accused by the evidence of minor officials of the company produced before the grand jury of and was to be indicted for the crime of defrauding and conspiring to defraud the United States by false and fraudulent weighing. An element of the evidence was that the corset steel spring was shown to him by the inventor and he referred the inventor to the superintendent of docks upon which the weighing was 'done and who was on trial for the crime. From the sentence that "the scales originally had a longer beam than they had when the spring was used," a jury might lawfully find that the publication stated that the corset steel spring was

used in making the scales weigh falsely. The article, in so far as it touches or affects the reputation of the plaintiff, states: The plaintiff testified before the grand jury which was investigating the acts of the officers and employees relating to falsely weighing imported sugar that he was the inventor of the corset steel spring, that he showed the spring to an official of the company who referred him to an employee having charge of the weighing and that the spring was used in falsifying the scales. The innuendoes of the complaint seek to give the language of the publication a broader application, but improperly and ineffectually, because it is not the office of the innuendo to graft a meaning upon or enlarge the matter set forth, but to explain the application of the words used. The allegations of extrinsic facts do not enter into the discussion for the reason that if the defamatory matter is actionable *per se*, no inducement or averment of extrinsic facts is necessary. The publication does not charge the plaintiff with a crime or expose him to contempt, ridicule or disgrace. The invention of a device which may be used for criminal purposes and the showing of it to a person in whose business it might be so used and the fact that he did use it, do not, within reasonable and fair contemplation or understanding, tend to incriminate or disgrace the inventor. The plaintiff was not charged by the publication with an illegal or immoral act or exposed to contempt, ridicule or disgrace.

The judgment of the Appellate Division and the Trial Term should be reversed, with costs in all the courts, and the complaint dismissed.

WILLARD BARTLETT, Ch. J., HISCOCK and CUDDEBACK, JJ., concur; HOGAN, CARDOZO and SEABURY, JJ., dissent.

Judgment reversed, etc.