Chief Judge Desmond.
 

 The plaintiffs in these two libel actions demand damages because of an article published in defendant’s newspaper. Their complaints have been dismissed for insuffi
 
 *286
 
 ciency on the ground that the newspaper story was not libelous per se and that no special damages are pleaded as is required when the words are libelous
 
 per quod
 
 but not per se.
 

 On July 7, 1964 defendant’s daily newspaper
 
 The Times Herald Record
 
 (of Middletown, N. Y.) contained this:
 

 “
 
 Mr. and Mrs. Paul M. Hinsdale of Bahnville Hardens, New-burgh, have announced the engagement of their son, Robert W., to Concetta Kay Rieber of 43 Knox Drive, New Windsor.
 

 " Miss Rieber, a native of Brooklyn, was educated in Brooklyn and Newburgh schools. She is employed by Jack Wilkins Associates, Inc., at Newburgh.
 

 “
 
 Her fiance attended Newburgh and Connecticut schools. He is the president of the Jack Wilkins Associates insurance agency.
 

 “ The wedding is set for August.”
 

 Plaintiff Hinsdale’s complaint asserts that at the time of the publication defendant knew or by reasonable diligence could have learned that Mr. Hinsdale was and is married and the father of two children, and that Concetta Kay Rieber was and is married and the mother of three sons, and that there was and is no engagement to marry between Robert Hinsdale and Mrs. Rieber. The Hinsdale pleading alleges that defendant’s newspaper was of general circulation not only in Middletown, New York, but also in the City of Newburgh and its environs, that plaintiff lives and is in business in Newburgh and that he his been defamed by the newspaper announcement and held up to public disgrace, scorn and ridicule.
 

 The Rieber complaint, besides repeating some of Hinsdale’s allegations, says that Mr. and Mrs. Rieber live in New Windsor, that the wife was and is employed in the City of Newburgh, that because of the newspaper item Mrs. Rieber’s reputation has been damaged and an evil opinion of her induced in the minds of the people of the community and that because of her pain, shock, fright and physical and mental suffering the husband has been deprived of his wife’s services and society and put to expense, etc.
 

 Special Term, although it dismissed the complaints, conceded that the facts in
 
 Sydney
 
 v.
 
 Macfadden Newspaper Pub. Corp.
 
 (242 N. Y. 208) were “ practically identical” to those in the present cases, holding that the controlling decision was the
 
 *287
 
 earlier one of
 
 O’Connell
 
 v.
 
 Press Pub. Co.
 
 (214 N. Y. 352).
 
 O’Connell,
 
 so the court reasoned, was not overruled by
 
 Sydney
 
 which expresses the rule that for a libel per se to be actionable without special damages the damage must arise from the publication itself ‘ ‘ without any reference to extrinsic facts, except those generally known to a substantial number of the community of the general reading public.” The court thought, apparently, that these complaints did not meet the
 
 O’Cormell
 
 test. The Appellate Division unanimously affirmed and gave plaintiffs leave to replead, a permission of which they did not make use. We granted plaintiffs leave to appeal to this court.
 

 It is not defamatory to say of a man or woman that he or she is engaged to be married but an announcement that an already married male or female is about to be married to a new partner imputes a violation of commonly accepted rules of marital morality, a deviation from community norms. It does not necessarily charge sexual immorality but to many minds it suggests a disregard of existing commitments and obligations (see
 
 Thayer
 
 v.
 
 Worcester Post Co.,
 
 284 Mass. 160, 162, 163, and, similarly,
 
 Cassidy
 
 v.
 
 Daily Mirror,
 
 2 K. B. 331, 337, 338 [1929]). Surely such an announcement about a seemingly happily married person comes as a surprise and shock to relatives and acquaintances. To publicize an imminent marriage between two already married persons who work in the same office and live in the same lightly populated area would normally cause a local scandal of considerable size. This announcement amounted, therefore, to a written accusation which tended to hold plaintiffs up to
 
 “
 
 ridicule, contempt, shame, disgrace or obloquy, to degrade [them] in the estimation of the community, * * * to diminish [their] respectability” (see 1 Seelman, Libel and Slander in New York, p. 8, “ Composite Definition ”, par. 18).
 

 As Chief Justice Rugg pointed out in
 
 Lyman
 
 v.
 
 New England Newspaper Pub. Co.
 
 (286 Mass. 258, 263): “ To say in print of a husband and wife that they have ceased to live together in harmony does some injury to the reputation of each.” Other courts in this State and elsewhere have agreed that a false statement as to a married person that he or she is about to be or has been divorced is defamatory (see
 
 Woolworth
 
 v.
 
 Star Co.,
 
 97 App. Div. 525;
 
 Rivers
 
 v.
 
 New York Evening Journal Pub.,
 
 
 *288
 
 120 App. Div. 574;
 
 Horton
 
 v.
 
 Binghamton Press Co.,
 
 122 App. Div. 332, 333, app. dsmd. 200 N. Y. 550;
 
 De Festetics
 
 v.
 
 Sun Print. & Pub. Assn.,
 
 57 Misc. 194;
 
 Gersten
 
 v.
 
 Newark Morning Ledger Co.,
 
 52 N. J. Super. 152).
 

 Printed material is, because of the relative permanency of its impact, more readily held to be defamatory per se than are oral utterances of similar import
 
 (Ostrowe
 
 v.
 
 Lee,
 
 256 N. Y. 36;
 
 Gurtler
 
 v.
 
 Union Parts Mfg. Co.,
 
 1 N Y 2d 5). We conclude, therefore, that printed statements like those in this newspaper announcement about married people are libelous per se, that is, that, without a showing of “ special ” damage, they raise a presumption of inevitable actual damage to reputation
 
 (Julian
 
 v.
 
 American Business Consultants,
 
 2 N Y 2d 1;
 
 Harwood Pharmacal Co.
 
 v.
 
 National Broadcasting Co.,
 
 9 N Y 2d 460).
 

 But the newspaper article here complained of does not itself refer to the fact (alleged in the complaint and now conceded) that the " engaged ’ ’ couple were in truth already married to others and living with their respective spouses. Defendant says — and the courts below agreed — that since the published mater rial needs the allegation of existing facts the libel, if any, is not per se but
 
 per quod
 
 and, lacking any allegation of special damages, is not actionable. The authority cited for this “ rule ” is
 
 O’Connell
 
 v.
 
 Press Pub. Co.
 
 (214 N. Y. 352,
 
 supra).
 
 Plaintiffs counter by citing
 
 Sydney
 
 v.
 
 Macfadden Newspaper Pub. Corp.
 
 (242 N. Y. 208,
 
 supra)
 
 and other cases in this court before and after
 
 O’Connell (Morey
 
 v.
 
 Morning Journal Assn.,
 
 123 N. Y. 207;
 
 Blake
 
 v.
 
 Sun Print. & Pub. Assn.,
 
 229 N. Y. 515;.
 
 Smith
 
 v.
 
 Smith,
 
 236 N. Y. 581;
 
 Ben-Oliel
 
 v.
 
 Press Pub. Co.,
 
 251 N. Y. 250;
 
 Braun
 
 v.
 
 Armour & Co.,
 
 254 N. Y. 514;
 
 Spector
 
 v.
 
 News Syndicate Co.,
 
 280 N. Y. 346;
 
 Henry
 
 v.
 
 New York Post,
 
 280 N. Y. 842;
 
 Balabanoff
 
 v.
 
 Hearst Cons. Pubs.,
 
 294 N. Y. 351). In each of those lawsuits a publication got from the courts the benefit of libel per se treatment although in each instance the writing was per se defamatory only because of extrinsic facts alleged in the complaint but not part of the published matter (for cases in other States see
 
 Pitts
 
 v.
 
 Spokane Chronicle Co.,
 
 63 Wn. [2d] 763;
 
 Murphy
 
 v.
 
 Harty,
 
 238 Ore. 228, 250;
 
 Conroy
 
 v.
 
 Breland,
 
 185 Miss. 787; see, also, 3 Restatement, Torts, § 563, comments e, f). As Professor Henn wrote in 47 Cornell Law
 
 *289
 
 Quarterly at page 16, New York was one of the “ pioneers ” in promoting the rule as to lihel by extrinsic fact.
 

 The
 
 Sydney
 
 v.
 
 Macfadden Newspaper Pub. Corp.
 
 (242 N. Y. 208, supra) decision would seem to control here. The plaintiff was a well-known actress of the day, known professionally under her maiden name of Doris Keane but married to one Basil Sydney. That latter fact was alleged in the complaint but nowhere alluded to in the newspaper column which was held to be libelous per se. The offending newspaper article said that Doris Keane was the “ latest lady love ” of Fatty Arbuckle, a movie comedian of the day whose claims to fame did not include a reputation for virtuous life. The columnist intimated that Doris Keane and Arbuckle were to marry. Defendant argued that the extrinsic fact of plaintiff’s marriage could not be considered in determining whether the article was libelous per se. This court, however, rejected that argument. The majority opinion in
 
 Sydney
 
 cited with approval
 
 Morey
 
 v.
 
 Morning Journal Assn.
 
 (123 N. Y. 207) where the newspaper article reported that a man (married although the newspaper did not say so) was threatened with a breach of promise suit. No special damages were alleged or proved, yet this court held that the fact of marriage was properly put before the jury. The
 
 Morey
 
 opinion (p. 210) cited a number of other decisions in which a fact not stated by the newspaper was held admissible to show that the article was libelous per se.
 

 Defendant would have it that the
 
 Sydney
 
 decision
 
 (supra)
 
 turned on the taking of judicial notice that Arbuckle, a famous actor, was a person of bad repute. Not so. The dissenting opinion in
 
 Sydney
 
 not only analyzes the majority holding as permitting the allegation and proof of the fact of plaintiff’s married status but says that the dissenter would have voted with the majority had the latter put its ruling on judicial notice of Fatty Arbuckle’s reputation. The dissent correctly characterizes
 
 Sydney
 
 as a flat holding that such extrinsic facts as that the libeled person is already married can be alleged and proved to make a publication libelous per se. The most recent decision in this court which agrees with
 
 Sydney
 
 as to pleading extrinsic facts is
 
 Balabanoff
 
 v.
 
 Hearst Cons. Pubs.
 
 (294 N. Y. 351,
 
 supra)
 
 which cites with approval (pp. 355-356) the Restatement, Torts,
 
 *290
 
 to the same effect. These authorities apply the reasonable, common-sense idea that a fact not expressed in the newspaper but presumably known to its readers is part of the libel. New-burgh is a small city and New Windsor an even smaller township, the kind of places where people know each other.
 

 Some of the decisions cited above (especially
 
 Morey
 
 v.
 
 Morning Journal Assn.,
 
 123 N. Y. 207;
 
 Smith
 
 v.
 
 Smith,
 
 236 N. Y. 581;
 
 Sydney
 
 v.
 
 Macfadden Newspaper Pub. Corp.,
 
 242 N. Y. 208, and
 
 Henry
 
 v.
 
 New York Post,
 
 280 N. Y. 842) are doubly relevant to our present case. Not only do they allow matter extrinsic to the publication to be used to make out a per se case but they show that it may be libelous per se to say things about a married person which would be innocuous as to one not married.
 

 We come now to the
 
 O’Connell
 
 v.
 
 Press Pub. Co.
 
 case (214 N. Y. 352, supra) and the disputed and controversial “ O’Connell rule” (“whatever it might mean”, Henn, Libel by Extrinsic Fact, 47 Cornell L. Q. 14, 34). If the
 
 O’Connell
 
 case means that a libel per se action cannot stand if extrinsic facts must be read with it or into it, then
 
 O’Connell
 
 is directly opposed to the numerous decisions of our court above cited (see discussion in 1 Seelman, Law of Libel and Slander in New York [rev. ed.], pars. 53, 67).
 

 Actually, the
 
 O’Connell
 
 decision
 
 (supra)
 
 is not in point here and not inconsistent with
 
 Sydney (supra).
 
 The reason for refusing to give it effect in
 
 Sydney
 
 was, it would seem, that
 
 O’Connell
 
 involved not “libel by extrinsic fact” but an effort to give defamatory meaning to the published words by ascribing to them an unnatural and unreasonable innuendo or ascribed meaning. The news article complained of in O’Connell’s case discussed a Federal court criminal prosecution not against O’Connell but against certain sugar importers in which it was charged that the latter had arranged for fraudulent underweighing of sugar to avoid import duties. The newspaper story reported that O’Connell as a witness before the Grand Jury had testified that he had invented a steel spring device and that an officer of the corporation which was later indicted had referred plaintiff to an employee, also later indicted. The complaint in O’Connell’s libel action alleged that these references to Rim meant that he had engaged in criminal conduct through the use of his invention on the weighing scales, The defendant moved
 
 *291
 
 to dismiss the complaint, alleging that the article was not a libel on its face but required the showing of extrinsic fact. This court held the complaint insufficient but not, it would seem, on that particular ground. The opinion says (p. 360) that by innuendo plaintiff was seeking “ improperly and ineffectually ” “ to give the language of the publication a broader application ”. The
 
 O’Connell
 
 decision, therefore, must be understood as one dealing with the attempted use of an innuendo not justified by the words themselves. It is not, therefore, applicable here nor does it control or overrule the
 
 Sydney
 
 and other cases which allow not the utilization of innuendos but the pleading of extrinsic facts.
 

 We conclude, therefore, that the complaint sufficiently alleges a publication libelous per se. It will be for a jury to say what damages (be they substantial or nominal) the several plaintiffs are entitled to.
 

 The order appealed from should be reversed and the motions to dismiss the complaints denied, with costs in all courts.
 

 Judges Fuld, Burke, Scilepfi, Bergan and Keating concur with Chief Judge Desmond; Judge Van Voorhis dissents and votes to affirm.
 

 In each action: Order reversed, with costs in all courts, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.