**Misho A. PROTIC, Plaintiff,**

v.

**Kenneth DENGLER, Defendant.**

**No. 98 Civ. 8179(LAK).**

United States District Court,
S.D. New York.

April 28, 1999.

Robert J. Barsch, Alfred E. Smith, New York City, for plaintiff.

Peter L. Altieri, Sandra J. Libeson, Epstein, Becker & Green, P.C., New York City, for defendant.

## MEMORANDUM OPINION (CORRECTED)

KAPLAN, District Judge.

Defendant moves to dismiss the complaint, which alleges claims for tortious interference with prospective employment opportunities, libel and slander. Plaintiff cross-moves for leave to amend. The only substantial argument raised in opposition to the cross-motion is that the amendment would be futile because it would not cure the alleged deficiencies of the original complaint. Accordingly, the Court will consider the sufficiency of the amended complaint.

### Facts

The plaintiff, Misho Protic, was employed by Donaldson, Lufkin & Jenrette, Inc. ("DLJ") as a securities trader for a period of less than four months. Defendant Kenneth Dengler was his supervisor. At a holiday party on December 11, 1997, the day on which Protic's employment at DLJ ended, Dengler allegedly prepared and wore a sign saying "I HIRED MISHO." He also allegedly disparaged Protic by stating that Protic deserved a negative job reference and that it had been a mistake to hire him. Subsequently, Dengler allegedly made unspecified disparaging comments about Protic, "such as" that Protic's work performance "was unsatisfactory" and that plaintiff was "not competent," to a number of securities firms to which plaintiff unsuccessfully applied for employment. Protic claims that he has been unable to obtain employment in the securities industry since he left DLJ.

## Discussion

### Tortious Interference With Prospective Economic Advantage

Protic's first claim for relief is based on the theory that Dengler's alleged actions constituted tortious interference with prospective economic relations, i.e., Protic's allegedly prospective employment relationships with other securities industry employers to whom Dengler allegedly disparaged him.

■ In order to state a legally sufficient claim on such a theory, the "plaintiff must allege that 'defendants interfered with business or economic relations between the plaintiff and a third party, either (1) With the sole purpose of harming the plaintiff; or (2) by dishonest, unfair or improper means.'"[1]

■ Although the proposed amended complaint alleges that certain of Dengler's alleged actions—his alleged statements to prospective employers that Protic was not competent—were taken "with the purpose of harming plaintiff,"[2] it makes no such allegation with respect to the others. Moreover, the allegation falls short of asserting that even these statements were made with the *sole* purpose of harming plaintiff. Dengler might have made such statements to other prospective employers for reasons other than the infliction of harm on Protic—for example, a desire to promote candid responses to DLJ inquiries about prospective employees who had worked elsewhere in the industry—so the omission is of no mean significance. As the presence of any other motive, even coupled with an intention to inflict harm, is fatal to a claim such as this,[3] the first claim for relief in both the complaint and the amended complaint fails to state a claim upon which relief may be granted.

■ Nor has plaintiff alleged that Dengler acted dishonestly or used unfair or improper means. The plaintiff alleges no more than that (i) Dengler expressed opinions of his performance with which plaintiff and perhaps others disagree, and (ii) did so at a party in a manner lacking in taste. But there is no suggestion in this claim for relief that Dengler did not in fact entertain the view of plaintiff that he expressed.[4] Hence, there was no element of deceit in his behavior. While his manners well might be questioned, assuming that the allegations of the complaint are true, bad manners are not actionable on this theory. Moreover, there is no reason to stretch the concept of dishonest, unfair or improper means in this case, as the gravamen of the claim—defamation—is amply covered by other theories of recovery.

Finally, the Court holds below that the allegedly slanderous statements of which Protic complains were statements of opinion which cannot give rise to liability for defamation in light of the State constitutional protection afforded such statements. For precisely the same reasons, those statements cannot be used to ground a claim for tortious interference with prospective economic advantage.[5]

### The Libel Claims

The libel claims—the fourth and fifth claims for relief—are based exclusively on

1. *S.O. Textiles Co. v. A & E Products Group*, 18 F.Supp.2d 232, 240 (E.D.N.Y.1998) (quoting *Campo v. 1st Nationwide Bank*, 857 F.Supp. 264, 273 (E.D.N.Y.1994)); *accord, Advanced Marine Technologies, Inc. v. Burnham Securities, Inc.*, 16 F.Supp.2d 375, 385 (S.D.N.Y.1998); *see also Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 206 (2d Cir.1998).

2. Am. Cpt. ¶ 20.

3. *E.g., S.O. Textiles Co.*, 18 F.Supp.2d at 240 (quoting *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 269 (2d Cir. 1987)).

4. The defamation claims allege that Dengler's statements were false and known by him to be so at the time he made them. (Am Cpt ¶¶ 29, 34, 39, 44) These allegations are not made in the tortious interference claim.

5. *E.g.*, ROBERT D. SACK AND SANDRA S. BARON, LIBEL, SLANDER AND RELATED PROBLEMS 671–72 (2d ed.1994) (hereinafter SACK).

Dengler's publication of the sign, "I HIRED MISHO," at the holiday party. The fourth claim asserts that the publication was libel per se, the fifth that it merely was libelous, presumably *per quod*. Both claims, however, rely on precisely the same allegations.

■ A writing which is libelous *per se* is one "whose defamatory meaning is apparent on the face of the communication" and is actionable without proof of special damages.[6] If the statement is not libelous on its face, but is susceptible of a defamatory meaning in light of extrinsic facts known by the recipient, it nevertheless is actionable, but perhaps only with proof of special damages.[7] The distinction might be illustrated, for example, by an ordinary wedding announcement in a newspaper, ordinarily an occasion for celebration, but quite defamatory if the reported bride and groom each were married to other mates.[8] This latter category of libel—libel by extrinsic fact—often is called libel *per quod*, although the use of the terminology arguably is more confusing that helpful.[9]

■ In this case, the writing—"I HIRED MISHO"—clearly is not susceptible on its face of a defamatory meaning. While it perhaps might be actionable if one or more viewers was aware of extrinsic facts which, taken together with that statement, could have harmed plaintiff's reputa-

tion, the plaintiff's pleadings do not clearly allege such extrinsic facts.[10]

Accordingly, plaintiff's claims for libel both in the complaint and the proposed amended complaint are deficient.

*The Slander Claims*

The second and third causes of action allege slander *per se* and slander, respectively, and are based on Dengler's alleged oral communications regarding the plaintiff.

■ A verbal statement is slanderous *per se* —that is, actionable without proof of special damages [11]—insofar as is relevant here if it would tend to injure the plaintiff in his or her trade, business or profession because it imputes to the plaintiff conduct "of a kind incompatible with the proper conduct of the business, trade, profession or office itself. The statement must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection on the plaintiff's character or qualities." [12]

In this case, Protic alleges that Dengler made the following oral statements of and concerning him:

(a) Protic deserved a negative job reference.

(b) It had been a mistake to hire Protic.

(c) Protic's work had been unsatisfactory.

6. Sack 132.

7. The common law rule required pleading and proof of special damages in such circumstances. *Id.* (internal quotations omitted). It is an open question whether New York has abandoned that requirement. *Compare Stich v. Oakdale Dental Center, P.C.,* 120 A.D.2d 794, 796, 501 N.Y.S.2d 529, 531 (3d Dept. 1986) (special damages not required), *with Matherson v. Marchello,* 100 A.D.2d 233, 236 n. 3, 473 N.Y.S.2d 998, 1002 n. 3 (2d Dept. 1984) (Titone, J.) (continued vitality of special damages requirement remains open).

8. *See Hinsdale v. Orange County Pub., Inc.,* 17 N.Y.2d 284, 270 N.Y.S.2d 592, 217 N.E.2d 650 (1966).

9. *Matherson,* 100 A.D.2d at 236 n. 3, 473 N.Y.S.2d at 1002 n. 3.

10. This makes it unnecessary to decide whether pleading and proof of special damages is necessary in a case of libel by extrinsic facts and, if so, whether these pleadings sufficiently allege such damages. *See* note 6, *supra*.

11. The characteristics that make a written statement libelous *per se,* confusingly enough, are not the same characteristics that make a verbal statement slanderous *per se. See generally* Sack 128.

12. *Liberman v. Gelstein,* 80 N.Y.2d 429, 436, 590 N.Y.S.2d 857, 861, 605 N.E.2d 344 (1992) (internal quotations omitted).

(d) Protic was not competent to perform the duties of a securities trader.

Statements (a), (c) and (d) seem clearly to have reflected directly on Protic's fitness to perform the duties of his profession and therefore were slanderous *per se* in the sense that they would tend to injure him in the performance of his profession.

■■■ The next question is whether, as defendant argues, the statements complained of are not actionable because they were merely statements of opinion. In *Gertz v. Robert Welch, Inc.*,[13] the Supreme Court wrote that "[t]here is no such thing as a false idea," thus giving birth to the doctrine that statements of opinion may not give rise to liability for defamation. While *Milkovich v. Lorain Journal Co.*,[14] cut back somewhat on *Gertz*'s implications for statements of opinion, the New York Court of Appeals has afforded greater protection for such statements under the State Constitution than exists under the First and Fourteenth Amendments.[15] Under New York law, a statement of opinion may not result in liability for defamation, and a statement is one of opinion if (1) the language lacks a readily understood meaning, (2) it is incapable of being proven false, and (3) the text or social context signals to the audience that the statement is one of opinion rather than of fact.[16] The determination whether a statement is one of fact or of opinion, moreover, is a question of law for the court.[17]

■■■ The statements of which Protic complains here clearly were statements of opinion. Anyone with even modest worldly experience knows that job capabilities and performance that are satisfactory or even exemplary to one are unsatisfactory to another. This has important consequences. First, the recipient of comments such as those complained of here necessarily knows that the comments reflect the speaker's opinion. Second, it is impossible to determine the truth, falsity or even precise meaning of the comments because these matters necessarily depend on the subjective criteria brought to bear. Thus, when one considers the nature and context of the statements, a hearer would have understood them to convey Dengler's subjective assessment of plaintiff rather than any specific, objectively verifiable facts. Further, while a negative summary assessment of employee performance usually implies that there are undisclosed facts which led to the assessment, the "sting" of the negative statement, if there is one, derives not from the unspecified and unknowable facts upon which it presumably is based, but from the speaker's subjective evaluation of those facts. This Court therefore holds that the statements in question were statements of opinion as a matter of New York law and therefore not actionable. This view is supported, moreover, by cases which have considered analogous employee evaluations.[18]

---

**13.** 418 U.S. 323, 339, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

**14.** 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).

**15.** *See Immuno AG v. Moor–Jankowski*, 77 N.Y.2d 235, 566 N.Y.S.2d 906, 567 N.E.2d 1270, *cert. denied*, 500 U.S. 954, 111 S.Ct. 2261, 114 L.Ed.2d 713 (1991); *Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir.1997).

**16.** *Gross v. New York Times Co.*, 82 N.Y.2d 146, 153, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (1993).

**17.** *E.g., Levin*, 119 F.3d at 196.

**18.** *Ligaya v. American Friends of the Hebrew University, Inc.*, No. 96 Civ. 240(JGK), 1998 WL 146227, at *8–*9 (S.D.N.Y. Mar.25, 1998) ("evaluation of ... employee's performance ... is a matter of opinion"); *Huntemann v. City of Yonkers*, No. 95 Civ. 1276(LAP), 1997 WL 527880, at * 11 (S.D.N.Y. Aug.25, 1997) (statement that plaintiff "never should have been hired" is opinion); *Howard v. Alford*, 229 A.D.2d 996, 645 N.Y.S.2d 208 (4th Dept.) (statement that employees "not producing" not actionable), *leave to appeal denied*, 647 N.Y.S.2d 650 (1996); *see also Aronson v. Wiersma*, 65 N.Y.2d 592, 594, 493 N.Y.S.2d 1006, 1007, 483 N.E.2d 1138 (1985) (expression of dissatisfaction with employee not actionable); *Parks v. Steinbrenner*, 131 A.D.2d 60, 520 N.Y.S.2d 374 (1st Dept.1987) (characterization of umpire as "incompetent" not actionable even if unsupported by facts); *Tu-*

282

## Conclusion

For the foregoing reason, defendant's motion to dismiss the complaint is granted. Nevertheless, as it is not yet clear that plaintiff can allege no facts which would give rise to a right to relief, plaintiff will be given one last chance to file a legally sufficient amended complaint. Accordingly, the dismissal is without prejudice to the filing of an amended complaint, on or before April 19, 1999, except that the dismissal of the fourth claim for relief is with prejudice. Plaintiff is cautioned to give due regard to Rule 11 in the event he files an amended complaint, as the good faith basis for some of the factual allegations in the existing and proposed amended complaints is not readily apparent, although plaintiff of course may be able to justify them.

Plaintiff's cross-motion for leave to serve an amended complaint in the form annexed to the cross-motion is denied on the ground that amendment would be futile in that the proposed amended complaint fails to state a claim upon which relief may be granted.

SO ORDERED.

*fano v. Schwartz,* 95 A.D.2d 852, 464 N.Y.S.2d 211 (2d Dept.1983).