ANGLO–IBERIA UNDERWRITING MANAGEMENT COMPANY and Industrial Re International, Inc., Plaintiffs,

v.

Daniel J. LODDERHOSE, Security Resources International, Inc., GC Insurance Brokers Limited, GC Intermediaries Limited, Peter J. Greengrass, Leslie J. Cooper, and A.J. Smith, Defendants.

No. 97 Civ. 0084(VM),
97 Civ. 5116(VM).

United States District Court,
S.D. New York.

Sept. 12, 2003.

Order Partially Granting Reconsideration
Oct. 8, 2003.

John R. Keough, Waesche, Sheinbaum & O'Regan, New York City, for plaintiffs.

Michael Gordon Biggers, Bryan Cave, Ronald R. Sussman, Kronish, Lieb, Weiner & Hellman LLP, Charles Hyman, Nicoletti, Kissel & Pesce LLP, New York City, for defendants.

### DECISION AND ORDER

MARRERO, District Judge.

By order dated September 4, 2002, the Court granted plaintiffs Anglo–Iberia Underwriting Management Company ("AI") and Industrial Re International, Inc. ("IR," and collectively with AI, "Plaintiffs") a default judgment against two of the defendants to this action, Daniel J. Lodderhose ("Lodderhose") and Prio Adhi Sartono ("Sartono," and collectively with Lodderhose, "Defendants"). Plaintiffs moved for damages against those defendants, and submitted the affidavit ("Pl. Aff.") of Rene A. Gutierrez ("Gutierrez") in support. Gutierrez is the President of AI and IR. For the reasons set forth below, the Court finds Lodderhose and Sartono

jointly and severally liable to AI in the amount of $2,133,094.95, and directs entry of judgment against them in that amount.

## I. BACKGROUND [1]

AI, a reinsurance underwriting manager, and IR, a reinsurance intermediary, entered into an agreement with an enterprise called P.T. Astek (Persero) and also known as P.T. Jamsostek (Persero) ("Astek"). Astek, which is owned by the Indonesian government, purportedly agreed to reinsure a portfolio of reinsurance risk for certain AI client companies. The collapse of this agreement constitutes the crux of the lawsuit.

Sartono and Lodderhose, among others, arranged the transaction from the Astek side. Sartono, an Astek employee, hired Lodderhose and his firm to be the exclusive global reinsurance managers for Astek, and all correspondence with Astek was to be directed through them. Sartoro and Lodderhose represented to AI and IR that Sartono was a director of Astek and that he was authorized to enter into reinsurance arrangements on its behalf. They also represented that Astek was authorized to write international reinsurance. The agreement failed because these representations were false.

Sartoro was a low-level Astek employee, not a director, and he was not authorized to enter contracts on Astek's behalf. According to affidavits filed as part of a previous motion, Astek is a statutorily-created enterprise that administers Indonesia's social security system, and it is prohibited by statute from conducting any other insurance business. *See Anglo–Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek*, No. 97 Civ. 5116, Docket # 11, at 2–3 (S.D.N.Y. Feb. 27, 1998) (P.T. Jamsostek

Motion to Dismiss). Those affidavits state that Sartono confessed to having misappropriated Astek's letterhead and official stamp and was fired. *Id.* at 8–9. A previous order of the Court agreed that Sartono had misappropriated Astek's name "as part of a scheme to misrepresent his authority to engage in reinsurance activity." *Anglo–Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek*, No. 97 Civ. 5116, 1999 WL 76909, at *3 (S.D.N.Y. Feb. 16, 1999). The other defendants, including Lodderhose, had reason to suspect that Sartono was a fraud, but they failed to investigate.

When these facts came to light, Plaintiffs stopped paying the premiums and brought this lawsuit. Plaintiffs' complaint asserts various claims against Sartoro and Lodderhose, including breach of contract, fraud and misrepresentation, and state and federal racketeering.

Previous orders of the Court include a more detailed review of the facts and the other parties. *See Anglo–Iberia Underwriting Mgmt. Co. v. Lodderhose*, 224 F.Supp.2d 679, 681–83 (S.D.N.Y.2002); *Anglo–Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek*, No. 97 Civ. 5116, 1998 WL 289711, at *1–2 (S.D.N.Y. June 4, 1998).

## II. DISCUSSION

### A. STANDARD FOR DEFAULT JUDGMENT DAMAGES

When the Court enters a default judgment, it must "accept[ ] as true all of the factual allegations of the complaint," *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981), but "the amount of damages are not deemed true." *Credit Lyonnais Securities (USA) v. Alcantara*, 183 F.3d 151, 152 (2d Cir.1999). The

---

**1.** The factual background is derived from two complaints which the Court later consolidated into the present lawsuit. *See Anglo–Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek*, No.

97 Civ. 5116, Docket # 1 (S.D.N.Y. July 15, 1997); *Anglo–Iberia Underwriting Mgmt. Co. v. Lodderhose*, No. 97 Civ. 84, Docket # 1 (S.D.N.Y. January 7, 1997).

Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* This inquiry "involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under this rule." *Id.* In calculating damages, the Court "need not agree that the alleged facts constitute a valid cause of action." *Au Bon Pain,* 653 F.2d at 65.

Accordingly, the Court will consider to what extent Plaintiffs, via their complaint and the Gutierrez affidavit, have demonstrated "with reasonable certainty" they are legally entitled to damages. The Court has wide discretion in this regard. *See Sony Corp. v. Elm State Elecs., Inc.,* 800 F.2d 317, 321 (2d Cir.1986) (reviewing default damages for abuse of discretion).

### B. *PLAINTIFFS' ALLEGED DAMAGES*

■ AI claims losses of $711,031.65 for premiums it paid to defendants, which were never returned. Pl. Aff. ¶ 15(a). AI provides photocopies of the checks it wrote to Astek and of bank transfer orders. These losses are recoverable as the actual pecuniary losses resulting from the fraud, *see Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996) (measure of damages for fraud is "out-of-pocket" rule), and the court credits AI's evidence in this regard.

AI also claims it paid claims made by reinsureds "in the reasonably estimated sum of $1,100,000." Pl. aff. at ¶ 15(b). AI provides no explanation of how it arrived at this sum, nor any verification of this sum, besides the Gutierrez affidavit itself.

The Court concludes that AI has not demonstrated this measure of damage with reasonable certainty.

■ AI next claims it lost the opportunity to earn substantial management fees. Pl. aff. ¶ 15(c). According to tax records, AI's management fees dropped from $918,917 to $179,214 between 1996 and 1997, allegedly because of the failed Astek deal. AI has not earned any fees since. AI claims that, but for Defendants' breach of contract and tortious conduct, it could have continued the agreement with Astek or another reinsurer and thereby earned fees for at least 25 years. It argues that its losses at the "conservative rate of $739,703 per year" – the fee difference from 1996 to 1997 – would have totaled over $18 million. Pl. Aff. at ¶ 15(c)(iv). The Court disagrees.

Initially, it is far from clear that AI could have earned the same fees in 1996 as in 1997, had the Astek agreement not collapsed. AI merely invites the Court to assume that the Astek agreement, to the exclusion of any other possible factor, accounts for the difference. Moreover, AI has failed to explain in any detail what provisions of the Astek agreement, in conjunction with other reinsurance arrangements, would have resulted in fees totaling over $700,000 per year. The Court concludes that AI's speculative assertions about future management fees fail to demonstrate damages with reasonable certainty and are thereby unrecoverable.

■ Similarly, IR claims it lost substantial brokerage commissions. Pl. Aff. ¶ 15(d). It claims that its commissions dropped from $652,119 to $530,924 between 1997 and 1998, and that it made no commissions thereafter.[2] IR calculates

2. It is unclear how IR arrived at these figures. The records it attached to the Gutierrez affidavit show that IR earned $617,650 in commissions and fees in 1998 and $495,500 in commissions and fees in 1999. Even if the record accurately reflected the representations in the Gutierrez affidavit, the Court would conclude that these fees are speculative and thus unrecoverable.

that at its 1997 rate of around $600,000 in fees, it would have earned over $15 million over the next 25 years. Pl. Aff. ¶ 15(d)(v). Again, the Court disagrees.

IR has not explained in any detail how the collapse of the Astek agreement accounted for the losses, to the exclusion of other factors, nor has it explained how the Astek agreement, if successful, would have resulted in any particular amount of fees. Thus, the Court concludes that IR has not demonstrated its assertions of future commission with reasonable certainty.

■ Next, Plaintiffs assert that the damage to their reputations, as a direct result of Defendants' conduct, caused them to close their businesses. They assert Defendants should be ordered to pay $10,000,000 for the business closure. Pl. Aff. ¶ 15(e). Plaintiffs provide no explanation of how they arrived at the figure of $10,000,000. The Court must accept the facts in the complaint as true – namely, that Defendants' caused AI and IR to close – but the Court need not uncritically accept an entirely unsubstantiated figure. The Court concludes that these damages are speculative and thus not recoverable.

■ Plaintiffs allege they have incurred legal fees of an estimated $575,000 in defending claims against them arising out of the failed Astek agreement, and in prosecuting the present claims against Defendants. Pl. Aff. ¶ 15(g). Again, they provide no explanation as to how they arrived at that figure. They attach a copy of a complaint of a lawsuit brought against AI and IR, and assert that at least $225,000 of the legal fees are attributable to that lawsuit. The Court cannot possibly conclude, with any certainty, that these companies spent over $500,000 in legal fees from the

mere fact that a complaint was filed. Without more, these costs are not recoverable at this time. Plaintiffs shall have leave to file a supplemental application for reasonable and sufficiently documented attorneys fees and costs incurred in connection with prosecuting this action.

AI and IR urge the Court to treble the damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 and 1962, or as a measure of punitive damages. Pl. Aff. ¶ 15(f). Plaintiffs have successfully pled a cause of action under RICO,[3] and the statute states that such plaintiffs "*shall* recover threefold the damages...." 18 U.S.C. § 1964(c) (emphasis added). Accordingly, the Court orders a judgment in the amount of three times the award to AI, or $2,133,094.95.

### III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that defendants Daniel J. Lodderhose and Prio Adhi Sartono are found liable, jointly and severally, to plaintiff Anglo–Iberia Underwriting Management Company and the Clerk of Court is directed to enter judgment in the amount of $2,133,094.95, and it is further

**ORDERED** that within twenty (20) days of the date of this order Plaintiffs may file a supplemental application for reasonable attorney's fees and costs incurred in prosecuting this action.

**SO ORDERED.**

### *DECISION AND ORDER*

Plaintiffs Anglo–Iberia Underwriting Management Company ("AI") and Indus-

---

**3.** Although a previous order of the Court dismissed the RICO claims as inadequately plead, the Court permitted plaintiffs to replead those claims within 15 days. *See P.T. Jamsostek,* 1998 WL 289711, at *6. Plaintiffs then submitted an amended complaint, which cured the defect. *P.T. Jamsostek,* No. 97 Civ. 5116, Docket Entry # 23 (filed June 17, 1998).

trial Re International, Inc. ("IR," and collectively with AI, "Plaintiffs") move under Federal Rules of Civil Procedure 59 and 60 to alter the Court's judgment in this case, which the Court entered by Decision and Order dated September 11, 2003 (the "Decision").[1] For the following reasons, the motion is granted in part and denied in part.

## I. BACKGROUND

The Court's Decision authorized entry of a default judgment for Plaintiffs against defendants Daniel J. Lodderhose ("Lodderhose") and Prio Adhi Sartono ("Sartono"), and awarded AI damages in the amount of $2,133,094.95. The Court found that Lodderhose and Sartono, among others, participated in an elaborate fraud involving a reinsurance agreement, causing Plaintiffs to lose millions of dollars. Plaintiffs had sought default damages far in excess of the amount awarded. The Court's Decision concluded that Plaintiffs had insufficiently documented most of the damages they sought. In this motion, Plaintiffs, supplying some of the additional evidence the Court had found lacking, endeavor to correct the deficiencies the Court had identified, principally to increase the Court's original award.

## II. RULES 59 AND 60

Rule 59(e) permits a motion to alter or amend a judgment within ten (10) days after the entry of a judgment. Fed. R.Civ.P. 59(e). "[T]he district court enjoys considerable discretion in granting or denying the motion." 11 Charles Alan Wright & Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2810.1 (2d ed.1995). However, "[t]he Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have

been raised prior to the entry of judgment." *Id.* (footnotes omitted); *see also Bonded Concrete, Inc. v. D.A. Collins Constr. Co.*, 29 Fed.Appx. 725, 726 (2d Cir.2002).

Under Rule 60(a), "errors ... arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party...." Fed.R.Civ.P. 60(a). Rule 60(b)(1) permits the court, upon motion, to "relieve a party ... from a final judgment, order, or proceeding for ... (1) mistake, inadvertence, surprise, or excusable neglect...." Fed.R.Civ.P. 60(b)(1).

## III. DISCUSSION

### A. JUDGMENT AGAINST SRI

██ Plaintiffs argue that the Court's judgment of damages, entered only against Lodderhose and Sartono, should have reflected the fact that the Court had previously entered a default judgment against defendant Security Resources International, Inc. ("SRI"). The Court agrees and, by this Order, will amend the judgment accordingly.

### B. OUT-OF-POCKET LOSSES

██ Plaintiffs allege that the Court should have granted a larger award for Plaintiffs' out-of-pocket losses, in the form of insurance claims paid under the agreement at issue in this lawsuit. Plaintiffs first direct the Court's attention to a declaration which was entered into the record at a previous stage of this lawsuit, and which demonstrates that AI paid at least $329,000 in insurance claims. Although Plaintiffs failed to attach, or otherwise reference, the document in their subsequent declaration in support of default damages, the Court recognizes this document as part

---

1. The Decision is reported as *Anglo–Iberia Underwriting Mgmt. Co. v. Lodderhose,* —— F.Supp. ——, No. 97 Civ. 84, 2003 WL 22118859 (S.D.N.Y. Sept. 12, 2003).

of the record and credits these out-of-pocket losses. The damages judgment will be amended accordingly.

Plaintiffs next reference a new document demonstrating that AI paid $610,007.03 in claims in December 1997. Plaintiffs had sought to recover this amount in their declaration in support of default damages, but the Court concluded that Plaintiffs had failed to provide any explanation or verification of this figure. Again, this document should have been made part of the original filing. Nevertheless, because this document substantiates a specific claim which was part of the original filing, the Court credits the amount and will amend the judgment accordingly.

Finally, Plaintiffs argue that the Court should have awarded AI damages for substantial management fees it would have earned had the agreement at issue not collapsed. AI offers no persuasive new arguments or sufficient substantiation on this point, and the Court adheres to its initial conclusion that these damages are far too speculative and undocumented to be recoverable, especially under a judgment entered by default.

## C. *DAMAGE TO REPUTATION*

 Plaintiffs argue that the Court should have awarded some damages for defamation. Under New York law, when, as alleged here, a statement is libelous per se, a presumption of actual damage to reputation arises from the statement itself, thereby entitling the plaintiff to recover general damages. *Hinsdale v. Orange County Publ'ns, Inc.,* 17 N.Y.2d 284, 270 N.Y.S.2d 592, 217 N.E.2d 650, 652 (1966). In this posture, the "plaintiff need not offer proof of any damage but is entitled to recover for the injury to his reputation." *Walrus Mfg. Co. v. Excel Metal Cabinet Co.,* 161 F.Supp. 840, 843 (W.D.N.Y.1957). "The right, as a matter of law, to compensatory damages, however, does not imply a

right to substantial damages. Substantial compensatory damages must be founded upon a finding of substantial injury...." *Id.* at 844 (citation omitted). In such a case, "the *amount* of damages will always be in issue," and "evidence must be introduced to demonstrate that the award should be more than nominal." *Davis v. Ross,* 107 F.R.D. 326, 330 (S.D.N.Y.1985) (citing *Wood v. Lee,* 41 A.D.2d 730, 341 N.Y.S.2d 738 (App.Div. 1st Dep't 1973)) (emphasis in original).

In their original filing, Plaintiffs sought $10 million dollars in damages on the ground that the defamatory statements caused their businesses to close. The Court declined to award any damages in that regard because the $10 million figure was entirely unsubstantiated and the evidence establishing the alleged defamation as the sole cause to which Plaintiffs' financial collapse could be attributed was somewhat sparse. Plaintiffs have not offered any new evidence to support direct causation and the seemingly arbitrary figure of $10 million; instead, they argue that they are entitled to *some* unspecified award as a matter of law. The Court agrees that Plaintiffs are entitled to some award greater than zero as a matter of law. However, Plaintiffs offer no documentation to support any particular award and the Court is in no position to pull a significant arbitrary figure out of thin air. The issue of libel damages is, as one court explains, inherently imprecise:

> In a libel case, more perhaps, than in any other, the jury is generally considered to be the supreme arbiter on the question of damages. In actions for other torts, there is generally to be found some standard by which the reasonableness of an award of damages may be tested, but it is seldom so in action for libel and slander where the elements of

wounded sensibilities and loss of public esteem play a part.

*Id.* at 843–448.

Considering that Plaintiffs have introduced no evidence whatsoever "to demonstrate that the award should be more than nominal," *Davis*, 107 F.R.D. at 330, the Court will not engage in speculative guesswork and will instead award a nominal amount of $1,000 for each plaintiff for damage to their business reputations.

## D. *TREBLE DAMAGES*

■ As stated in the Court's Order dated September 11, 2003, Plaintiffs are entitled to treble damages under Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 and 1962. However, RICO's damages provisions only apply to "actual, out-of-pocket financial loss." *Dornberger v. Metro. Life Ins. Co.*, 961 F.Supp. 506, 521 (S.D.N.Y.1997). "Injuries that are speculative or unprovable in nature or amount are not recoverable— recovery must wait until the nature and extent of damages becomes 'clear and definite.'" *Id.* (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir.1994)). Applying this standard, the defamation damages under New York law would not be independently recoverable under Plaintiffs' RICO claim, and, therefore, the trebling provision does not apply to those damages.

## IV. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the Court's Order dated September 11, 2003 is amended to provide that defendants Daniel J. Lodderhose, Prio Adhi Sartono, and Security Resources International, Inc. (collectively, "Defendants") are found liable, jointly and severally, to plaintiff Anglo–Iberia Underwriting Management Company ("AI") and the Clerk of Court is directed to enter judgment in the amount of $4,950,116.04; and it is further

**ORDERED** that Defendants are found liable, jointly and severally to plaintiffs AI and Industrial Re International, Inc. (collectively "Plaintiffs") on Plaintiffs' defamation claim, and the Clerk of Court is directed to enter judgment in the amount of $1,000 for each plaintiff; and it is finally

**ORDERED** that the motion of Plaintiffs for reconsideration of the Court's Order dated September 11, 2003 is, in all other respects, denied.

The Clerk of Court is directed to close this case.

**SO ORDERED.**